## MARTIN v. STATE.

[73 South. 64.]

HOMICIDE. *Instructions. Manslaughter. Evidence.*

In a trial for homicide where the evidence was conflicting as to who was the aggressor in a fight during which one of the participants was killed by the other and the jury might have believed from the evidence that the killing was in the heat of passion, an instruction on manslaughter should have been given when asked for by the defendant and the failure in such case to give such instruction was reversible error.

APPEAL from the circuit court of Alcorn county.
HON. CLAUDE CLAYTON, Judge.
John Martin was convicted of murder and appeals.
The facts are fully stated in the opinion of the court.

*J. M. Boone* and *Ely B. Mitchell,* for appellant.

"The defendant in a criminal prosecution has a right to have the court instruct the jury on the law applicable to his contention, if supported by substantial evidence. However weak, unsatisfactory, or inconclusive it may appear to the court, to refuse to so instruct the jury would be to invade its province in the trial of a case. The question is not whether, in the mind of the court, the evidence, as a whole, excludes the idea that the defendant is guilty of an inferior degree of the offense charged, but whether there is any substantial evidence tending to prove any inferior degree of the offense. If there is, then the question of such degree should be submitted to, and left for the determination of the jury. The unsupported testimony of the defendant alone if tending to establish such inferior degree, is sufficient to require the court to so instruct." *State* v. *Buffington,* 66 Kan. 706, 72 Pac. 213.

"In the prosecution for murder whatever grades of the crime defendant's testimony may tend to prove should be governed by appropriate instructions, although his evidence may not be true." *State* v. *Richardson,* 92 S. W. 649, 194 Mo. 326. This same principle of law is sustained in the following cases: *State* v. *Fisher,* 59 Pac. 919, 23 Mont. 540; *Ringer* v. *State,* 85 S. W. 410, 74 Ark. 262; *Newton* v. *State,* 41 So. 19, 51 Fla. 82; *Trigo* v. *State,* 74 S. W. 546, 45 Tex. C. R. 127; *Boles* v. *Commonwealth,* 48 S. E. 527, 103 Vir. 816.

Judge STEVENS in rendering the opinion in the case of *Rester* v. *State,* 70 So. 881, uses the following language: "It is the province of the jury to pass upon the facts of a case and to believe parts of evidence of either side and discard any portion of the evidence either for the state or for the defendant. It is certainly the province of the jury also to settle any issue of fact in the case, but the defendant has the absolute right to have the facts of the case presented to the jury on instructions

which state them fully and accurately. The jury must apply the facts to the particular case in the light of and in accordance with the law of the case." *Rester* v. *State,* 70 So. 881.

The statutes of what constitute murder and manslaughter are so diversified that the court should give to the jury free latitude in determining these facts. "As a general rule it is always best to give both degrees of murder, no matter how atrocious the circumstances attending the homicide." *Barth* v. *State,* 39 Tex. Cr. R. 381, 73 Am. St. Rep. 935. "On the trial for murder the court should charge the jury as to what constitutes murder in the second degree though counsel for accused admit him to be guilty of that degree of crime, and if he is convicted of murder in the first degree in the absence of such charge his conviction should be set aside." *State* v. *Foster* (N. C.), 89 Am. St. Rep. 876. "The court should have given the charge asked, defining manslaughter." *Green* v. *State* (Miss.), 37 So. 646. "If a conviction of manslaughter would be correct should the jury accept one view of the evidence an instruction limiting the verdict to a conviction of murder or an acquittal is erroneous." *Johnson* v. *State of Miss.,* 75 Miss. 635, 23 So. 579.

"Where in a prosecution for homicide the evidence did not warrant a conviction for a higher offense than manslaughter it was error to omit to charge on manslaughter, though no such instruction was requested." *May* v. *State* (Miss.), 42 So. 164.

"Whether a defendant was guilty of manslaughter should be left to the determination of the jury although the evidence shows an unpremeditated killing by the defendant's brother in response to request of the defendant who had just been engaged in a fight, and was being held by two men, confronted by deceased armed with a stick to attack someone when he made the request." *Cook* v. *State of Miss.,* 85 Miss. 738.

"When two persons on a sudden quarrel engage in a mutual combat, and one is killed in the heat of the conflict the offense is at least manslaughter." *State* v. *Davidson,* 8 S. W. 413, 95 Mo. 155.

Counsel for appellant have no intention to ask this court to reverse or overrule the cases of *Virgil* v. *State,* 63 Miss. 320, *Parker* v. *State,* 102 Miss. 113, and *Rester* v. *State,* 70 So. 881, for the facts in these cases shows clearly that the offense was murder or nothing. There is no evidence in any of these cases upon which a verdict of manslaughter could be based but the facts in this case make out an entirely different case to those referred to above. In the Rester case the contention of the appellant was that he was sitting on or near the east end of the bridge across alligator creek, facing west, when Ladner, coming down the creek, raised his rifle to shoot appellant; appellant threw his gun up and shot Ladner in self defense. This state of facts show that it was murder or nothing.

In the Parker case the facts are such as reported that it is impossible to get a clear cut idea of just how the tragedy took place.

In the Virgil case the only question to be decided was whether Virgil wilfully and feloniously burned the house which caused the death of the deceased. You may analyze and investigate the facts in the numerous other cases decided by this court upholding the same principles of law and you will not find in any of these cases facts similar to the case at bar where a combat was entered into by the parties at night in a crowd where the combat was fierce and of duration of three or four minutes, where the evidence is conflicting as to who began the fight, as to who was the aggressor from the beginning to the end.

"Whenever the life of a human being is in the balance, it is but just to him that the law governing the case made against him be properly stated."

*Strickland* v. *State of Miss.,* 85 Miss. 134. It was error for the court to refuse the charge of manslaughter when the records show so clearly that Walter Taylor was killed by John Barton in the heat of a combat. I give the following authorities which bear out my contention as to this charge of manslaughter: *Green* v. *State,* 37 So. 646; *Johnson* v. *State,* 75 Miss. 635; *Mays* v. *State,* 42 So. 164; *Cook* v. *State,* 85 Miss. 738; *Summer* v. *State,* 34 S. E. 293, 109 Ga. 142; *Dorsey* v. *State,* 35 S. E. 651, 110 Ga. 331; *Davis* v. *State,* 39 S. E. 906, 114 Ga. 104; *Horton* v. *State,* 47 S. E. 969, 120 Ga. 307; *State* v. *Buffington,* 72 Pac. 213, 66 Kan. 706; *Bollin* v. *Commonwealth,* 94 Ky. 391; *Greer* v. *Commonwealth,* 111 Ky. 93; *Strickland* v. *State,* 81 Miss. 134; *State* v. *Magers,* 57 Pac. 197, 35 O. R. 520; *Riley* v. *State,* 81 S. W. 711; *Lara* v. *State,* 89 S. W. 840; 48 Tex. C. R. 568; *Fuller* v. *State,* 95 S. W. 1099.

*Lamar F. Easterling,* Assistant Attorney-General, for appellee.

Counsel cites several authorities from this state to sustain his proposition that the manslaughter instruction should have been granted the accused. A reference to all the cases of this state cited by counsel will show that each case depended upon its own facts and that the facts in none of those cases are parallel with the facts now before the court. The cases cited were cases where the difficulty resulting in the killing originated suddenly between parties, and were cases where the heat of passion was aroused by sudden heated provocation.

As stated in the case of *Guice* v. *State,* a case very similar to this one on the facts where the point was made that the court refused to instruct on manslaughter; still others sought an enunciation of the law as to the crime of manslaughter, and were properly refused, because there was no element of manslaughter in the case. The killing was either murder or justifiable upon the ground

of self-defense. There can be no claim of legal heat of passion arising from the act of an enemy in making a supposed hostile demonstration.''

In the case of *Rester* v. *State,* 70 So. 881, in briefing that case I argued that Rester, according to his own evidence, unnecessarily shot the deceased at a time when his life was not in danger or apparently so, and that for this reason the jury would have been warranted in finding him guilty of the lesser crime on the ground that he shot from fear rather than from malice. This court however, held that there was no element of manslaughter in the case and that it was error to grant an instruction authorizing the jury to convict of manslaughter. Judge STEPHENS quotes from the case of *Bates* v. *State* to the effect that if the evidence for the state was the truth, the verdict should have been for murder and if the defendant's statement was truth the defendant should have been acquitted.

The rule announced in the *Parker case,* 102 Miss. 113, is the correct one and the one applicable to this case as said there, so we say here, that there is no halfway ground, no debatable question, except that of the appellant's guilt or innocence of the crime of murder and that to have given a manslaughter instruction under the facts of this case would not only have been improper but would have been manifestly erroneous. In this case, according to the state's evidence we have all the elements that usually attend a case of deliberate murder. We have a motive, a purpose on the part of the appellant to carry it into effect, threats made several days before evidencing such motive and purpose and the presence of the appellant at the scene of the homicide awaiting his victim who was expected in on the train to marry his sweetheart.

We therefore most respectfully submit that under the facts of this case, the authorities cited by appellant's counsel are not in point and that there was no error on

the part of the trial court in refusing the manslaughter instruction.

SYKES, J., delivered the opinion of the court.

The appellant, John Martin, in the circuit court of Alcorn county, was convicted of murder for the killing of Walter Taylor, and was sentenced by the court to imprisonment in the penitentiary for life, from which judgment this appeal is prosecuted. The testimony in the case for the state and the defendant was conflicting. The testimony of the state was to the effect that several months previous to the killing the appellant, John Martin, and the deceased had had a fight over a negro woman, in which fight the deceased cut the appellant several times with a penknife; that appellant had stated that he intended to kill deceased; that several days before the killing the defendant had sharpened up a long-bladed knife. The killing occurred at the Mobile & Ohio depot at Corinth about nine o'clock at night on the arrival of the south-bound passenger train. Just before the arrival of this train the appellant stated to one or two negroes that he was going over to the train and kill him a man. The testimony further shows that the appellant knew that the deceased was coming down on that train and was going to marry the woman about whom they had had the first difficulty and with whom the appellant seems to have been living at the time of the killing; that, in pursuance of this design, appellant met the train, and, as soon as the passengers had alighted therefrom, looked up the deceased and provoked the difficulty; that the deceased when he got off of the train had in his hand a stick made of a spike maul handle. It further shows that the deceased had heard of these threats against his life, and before the train arrived at Corinth had asked a white friend of his to get off the train with him and protect him, as John Martin had threatened to kill him on his arrival at Corinth. The

state placed upon the stand two negro witnesses who testified that the appellant walked up to the deceased, and after some few words struck the deceased; thereupon the deceased struck appellant on the head with the stick. The fight then proceeded, with the deceased backing away from appellant and striking appellant over the head with the stick while appellant was advancing on deceased hitting him. It being dark, the witnesses could not see that the appellant had a knife in his right hand and was cutting deceased. Shortly after the difficulty began appellant grabbed deceased by his belt with his left hand. The deceased continued to back, and the appellant to advance until the town marshal separated them. About that time the deceased dropped to the ground almost dead. An examination of his body showed that he had been cut or stabbed eight or ten times, principally on the right side from below the right arm to just above the hip. The town marshal testified that when he separated the combatants he remarked to the appellant, "I see you have killed a man," to which appellant replied, "That was what I intended to do."

The testimony of the appellant was that he went to the train to meet a friend; that he had no malice or ill will toward deceased. He denied having made any threats against the life of the deceased. He stated that when he saw Walter Taylor, the deceased, at the station, he spoke to him in a friendly way, and that Taylor told him to get on away from him or that he would kill him with that stick; that he turned to go away, when Taylor struck him over the head with the stick and knocked his hat off; that he then turned upon Taylor, and that Taylor continued to assault him with the stick, and that he then took his knife from his pocket and proceeded to cut and stab the deceased in self-defense; that all during the difficulty he was trying to back away from the deceased; and that the deceased was advancing upon him with the stick, striking him on the head with the same.

The testimony of all of the witnesses who saw any part of the fight both for the state and for the defendant is to the effect that Taylor struck the defendant a number of times with the stick. The head of the defendant was examined after he was placed in jail, and he had several bruises and abrasions on it where he had been struck by the deceased. Two negroes also testified for the defendant that Walter Taylor was the aggressor in the difficulty; that when the defendant spoke to Walter he then struck the defendant with his stick as testified to by the defendant. The defendant's witnesses also testified that the defendant was backing away from the deceased all during the difficulty, and that the deceased was pursuing the defendant, striking him with the stick.

In short, if the jury believe the testimony of the state and absolutely accepted its theory of the same and disbelieved entirely all of the testimony introduced for the defendant, then that testimony made out a case of murder. On the other hand, if they accepted absolutely the theory of the defendant based upon the testimony introduced by the defendant, then they would have been justified in believing that the defendant acted in self-defense and of returning a verdict of not guilty.

No manslaughter instruction was asked by the state, but one was asked by the defendant reading as follows:

"The court charges the jury that the killing of a human being, without malice, in the heat of passion, without authority of law, and not in necessary self-defense, is manslaughter, and if you believe from the evidence beyond a reasonable doubt that the defendant so killed Walter Taylor, you will find him guilty of manslaughter."

The court below refused to give this instruction, and we are asked to reverse the case for this reason.

The jury in this case were not compelled to believe all of the testimony introduced by the state and to disbelieve all of the tetimony introduced by the defendant. They were not bound to accept either the theory of the

state or that of the defense as based upon the testimony. The jury are the sole judges of the facts in the case as testified to, and in arriving at their verdict it is wholly within their province to believe or disbelieve all or any part of the testimony where there is any contradiction in it. In this case the jury, had the manslaughter instruction been given, could have believed that the deceased was the aggressor in the difficulty, and they could also have further believed under this testimony that the appellant killed the deceased during the progress of this fight in the heat of passion, and not in necsary self-defense. A verdict of manslaughter would have been sustained by the testimony. The jury in this case could have found the defendant guilty of either murder or manslaughter, or could have acquitted him. Where the evidence is conflicting as to who is the aggressor in a fight during which one of the participants is killed by the other, a manslaughter instruction is proper. Under the testimony in this case it was error to refuse the manslaughter instruction asked by the defendant.

"There was not a charge given on either side as to manslaughter, and yet, on the proof, we think there might have been properly a verdict of manslaughter. We do not mean to say that a verdict of murder would be improper, on the testimony, if there had been no error of law; but, since a verdict of manslaughter might also be upheld, it was, in the distressingly conflicting state of the evidence, to the last degree important that no error of law should have been committed." *Johnson* v. *State,* 75 Miss. 635, 23 So. 579; *Green* v. *State,* 37 So. 646.

"Whenever the life of a human being is in the balance, it is but just to him that the law governing the case made against him be properly stated to the jury." *Strickland* v. *State,* 81 Miss. 134, 32 So. 921.

"It is the province of the jury to pass upon the facts of a case and to believe parts of the evidence of either side and disregard any portion of the evidence

either for the state or for the defendant. It is certainly the province of the jury also to settle any issue of fact in the case, but the defendant has the absolute right to have the facts of the case presented to the jury on instructions which state the law fully and accurately. The jury must apply the facts to the particular case in the light of, and in accordance with, the law of the case. If there is no element of manslaughter under the facts of the case, then there should be no instruction granted either to the state or to the defendant in reference to manslaughter." *Rester* v. *State,* 70 So. 881.

On the other hand, if there are any elements of manslaughter under any of the testimony in the case, then a manslaughter instruction is proper, and should be granted either to the state or to the defendant. *Echols* v. *State,* 70 So. 694.

*Reversed and remanded.*