## HALL V. STATE.

### [91 South. 397. No. 21899.]

1. CRIMINAL LAW. *Omission from instruction on manslaughter of requirements that jury be satisfied beyond a reasonable doubt held harmless, in view of other instructions.*

   Where a person was indicted for murder, and the state obtained a manslaughter instruction, which omitted the fact that the jury must believe from the evidence "beyond a reasonable doubt" that the defendant was guilty, but all of the instructions for the defendant contained this clause, and the jury were instructed upon every phase of the case for the defendant, the jury could not have been misled by this omission.

2. CRIMINAL LAW. *Jury may believe some facts testified to by state's witnesses and other facts testified to by defendant's witnesses in case of a conflict as to facts of homicide.*

   Where there is a conflict in the testimony as to the facts of the homicide, the jury are not compelled to believe all of the facts testified to by the witnesses for the state or the defendant. They may believe some of the facts testified to by the state's witnesses and other facts testified to by those of the defendant.

3. HOMICIDE. *Evidence that deceased cursed defendant, causing defendant to shoot him in the heat of passion and not in necessary self-defense, held to warrant a verdict of manslaughter.*

   Where a jury is warranted in believing from the testimony that the deceased cursed and abused the defendant, thereby causing the defendant to shoot him in the heat of passion, and not in necessary self-defense, then the jury are warranted in returning a verdict of manslaughter, and a manslaughter instruction is proper.

APPEAL from circuit court of Tallahatchie county. HON. JNO. W. KYLE, Judge.

Arrie Hall was convicted of manslaughter, and he appeals. Affirmed.

128 Miss.—41

*Hays, Stingley & Whitten,* for appellant.

We insist that the defendant could not have been convicted of any crime on this testimony of the state, but admitting that a verdict of some sort would stand on this testimony, then we have the emphatic and undisputed testimony of the real eye-witnesses to the shooting. There is nothing in the record to contradict it in any sort of way. If this testimon be true, then the defendant acted in self-defense.

"If all the testimony in this case, whether introduced by the state or the defendant, leaves the question of the defendant's guilt in reasonable doubt, a judgment of conviction cannot be upheld. This, as we see it, is a case that now confronts us. The account which the defendant gave is not upon its face an unreasonable story. He is the only eye-witness testifying. His testimony, unless materially contradicted by the physical facts, should not be utterly ignored." *Houston* v. *State,* 117 Miss. 311; *Patty* v. *State,* 88 So. 498 (Miss. No. 21809).

The defendant certainly had a right to defend himself and his home. Under the law he did not have to give one inch. When attacked he had a right to shoot and to shoot to kill wherever in the course of the unfortunate occurrence his bullet happened to hit.

But, they argued in the court below and we assume they will argue here, men do not shoot at the back of others in self-defense. We believe our court has held that under certain circumstances one can shoot another in the back in self-defense. However, in this case, the defendant certintly could not be guilty of manslaughter, having shot another in the back. That crime would be murder, and the jury has found the defendant not guilty of murder. The affirmative testimony for the defendant shows that being about to be assaulted with a pistol, the defendant began to shoot a Winchester rifle. The court no doubt will take judicial notice that Winchester rifles are rapid firing

guns. Then the reasonable presumption is, since there is no question that the first shot fired hit the dead man in front, that beginning to fire in self-defense, the defendant fired rapidly and before he realized or knew his assailant's back was turned, so fired as to hit his assailant in the back. We doubt that any human being could tell how it happened, whether it was by reason of the dodging of the mule or of the dodging of Mose. Certainly there is no evidence that the defendant meant to shoot in the back. The affirmative and undisputed testimony going to show that he meant to shoot in self-defense, believing himself to be in great danger of bodily harm, and we believe that any man so circumstanced as the defendant then was would have thought and would have acted as the defendant did.

They say again, that there was a jury question and the jury determined the evidence against the accused. We submit that the jury did not determine any case which had been properly submitted on the testimony before the court against the accused. That the only question they did determine which was properly submitted, that is, whether the defendant was guilty of murder, they determined in favor of the accused.

The next thing of which the defendant complains is the giving of the manslaughter instruction. There are two serious objections to this instruction. In the first place it instructs the jury to convict of manslaughter on a simple belief that the defendant shot in the sudden heat of passion, without any regard to the requirements of law that the jury must be convinced beyond a reasonable doubt of the defendant's guilt before it can convict of a crime. In the next place, there was no testimony of any sort upon which a manslaughter instruction could be based.

The instruction was erroneous and the case ought to be reversed because of the failure of the court to properly instruct the jury as to the degree of proof required. It is error to instruct a jury to convict the accused if they believe certain facts without charging that such belief

should exclude every reasonable doubt. *Godwin* v. *State,* 73 Miss. 873. In the next place, there was no testimony upon which a manslaughter instruction could be founded. *Cook* v. *State,* 85 Miss. 738.

In a recent case in which the facts introduced by the state showed a cold-blooded murder and those introduced by the defendant showed an accident, and in which there was an acquittal of murder and conviction of manslaughter, the court said: "Under the testimony for the state the appellant was guilty of murder. Under that for appellant he was guilty of nothing—the verdict of the jury, which found the appellant guilty of manslaughter was an acquittal of murder, since there is no element of manslaughter shown by the evidence, it was error to give a manslaughter instruction." *Walker* v. *State,* 123 Miss. 517, and cases cited there.

In the case before the court the testimony for the state itself fails to show that a crime was committed. The testimony for the defendant affirmatively and indisputably shows that the defendant acted in necessary or apparently necessary, self-defense, being at the time in danger of great bodily harm or in such a situation as a reasonably prudent man would have believed himself in such danger.

In this case the state attempting to prove a crime had been committed with malice aforethought, and realizing it had failed in its attempts, asked a manslaughter instruction. Such an instruction, coupled with an appeal to the jury that the shooting could not be in self-defense because one of the shots struck Mose in the back, led the jury into bringing in an erroneous verdict, based on the ground that is had a right to presume the defendant shot because he was angry. We submit the case ought to be reversed and dismissed because the jury has found the defendant not guilty of murder and because there is no element of manslaughter involved. *Walker* v. *State,* 123 Miss. 317.

*D. C. Enochs,* Assistant Attorney-General, for the state.

It certainly cannot be said that the homicide was justi-fiable. I do not believe that it can ever be said that a homicide is justifiable when the deceased has been shot in the back. Under the circumstances the deceased in this case was shot in the back. Undoubtedly the appellant was urged on by an uncontrollable passion, to shoot the appel-lant in the back, as he did, when the appellant was riding off and away from him.

The appellant next complains that conceding that a manslaughter instruction was proper, yet the manslaugh-ter instruction in this case, which is set out on page 7 of the record, was erroneous in that it does not charge the jury it must believe the facts therein set out from the evi-dence "beyond a reasonable doubt." I must confess that the instruction taken by itself, is erroneous in this par-ticular. But I submit that the error is not a reversible one in this case. The appellant cites in support of his con-tention the case of *Goodwin* v. *State,* 73 Miss. 873. In that case all of the instructions for the appellant were refused, even those invoking the doctrine of reasonable doubt. And this court in that case said that under such circumstances, it was especially incumbent on the court to charge the jury correctly for the state, and yet, in not one of the seven charges given for the state are the jury told that they must believe from the evidence beyond a reasonable doubt, etc., but in five of the seven, are told to convict if they merely 'believe from the evidence' so and so—merely 'be-lieve' and, in the seventh, they are told to convict if they believe, so and so, the words, from the evidence, even not being added. The court manifestly meant to decide for it-self that there was no reasonable doubt. And, for this reason, all the instructions given for the state, except the fifth, are erroneous." How different, however, is the case at bar from the Goodwin case. I call to the court's atten-tion the first instruction granted the defendant on page 10 of the record, whereby the jury was charged that there

rested on each juror "a grave responsibility to see to it that no penalty of the law is inflicted on this defendant unless the state has shown by the evidence beyond every reasonable doubt, to a dead moral certainty, that the defendant is guilty as charged." I call to the court's attention the instruction granted the appellant as shown at the bottom of page 14 of the record, whereby the jury is charged that each and every material part of the indictment must be proved by the state "beyond every reasonable doubt before the jurors, under their oaths, can find the defendant guilty." I call to the court's attention the instruction granted the appellant as shown at the bottom of page 15 of the record, whereby the jury was charged that "each fact essential to the conclusion of guilt must be established by evidence believed by the jury, beyond every reasonable doubt, and if there is any fact or circumstance shown by the evidence in this case upon which the jury can place a reasonable construction favorable either to the state or the defendant, it is the duty of the jury to accept that construction favorable to the defendant.

I call to the attention of the court the instruction granted the appellant as shown at the top of page 16 of the record, whereby the jury was charged that: "The state, under the law, must never be given the benefit of any doubt, but it must be held strictly to the burden of proving, beyond ever reasonable doubt, to a dead moral certainty, the guilt of the defendant." I call the court's attention to the instruction granted the appellant as shown at the bottom of page 16 of the record, whereby the jurors were charged that: "The jurors should reconcile the evidence to accord with the theory of his innocence if they can, and if they cannot, they must acquit, unless guilt be proven by the evidence to a moral certainty, which means beyond all reasonable doubt arising out of the evidence or the want of evidence." I call the court's attention to the instruction granted the appellant as shown at the top of page 17 of the record, whereby the jury was charged that it is impossible to define with precision the term "reasonable

doubt," "but that it is a doubt which the juror may have, growing out of the evidence or with even greater force, out of a failure on the part of the state to produce sufficient evidence to convince the jurors to a dead moral certainty. If there is such doubt in the mind of any member of this jury, no verdict of guilty can be returned. I call to the court's attention the instruction granted the appellant as shown at the bottom of page 17 of the record, whereby the jury was charged, before a verdict of guilty could be returned, that each juror must be convinced by the state's evidence beyond a reasonable doubt, to a dead moral certainty, of his guilt. I call to the court's attention the instruction granted the appellant as shown at the top of page 18 of the record, whereby the jury was instructed that if it is probable from the evidence that the killing was done in necessary self-defense, there is ground for reasonable doubt, and the defendant must be acquitted."

I call to the court's attention the instruction granted the appellant as shown at the bottom of page 17 of the record, whereby the jury was charged that if there is a probability in what, in the situation defendant was then placed, would have appeared to an ordinarily reasonable man as perilous to him, then a reasonable doubt exists as to his guilt, and the jury must acquit.

I therefore submit that while it was a technical error to omit from the state's instruction on manslaughter the words beyond a reasonable doubt, it is not a reversible error in this case, because of the many instructions in behalf of appellant, whereby the jury was repeatedly charged that it could not convict unless his guilt appeared from the evidence beyond a reasonable doubt, and to a dead moral certainty. The jury in the case at bar could not have been misled by the error in this instruction in the light of the many instructions for the appellant, and undoubtedly believed him guilty of manslaughter from the evidence beyond a reasonable doubt.

I therefore submit that no reversible error was committed by the trial court, and that this case should be affirmed.

SYKES, P. J., delivered the opinion of the court.

The appellant was convicted of manslaughter, and sentenced to serve a term of ten years in the penitentiary. According to the testimony for the state, the deceased was riding a mule along the road, going to the house of a neighbor to borrow an ice cream freezer when some one from the house of the appellant called him. He rode close to a window of the house, and as he was leaving the appellant shot him twice with a Winchester rifle, one bullet entering the arm and the other the back. According to this testimony the deceased was doing nothing except riding along when he was shot.

The testimony for the appellant was to the effect that the deceased rode up on the window of his house, and called for the appellant, who at that time was asleep; that someone waked up the appellant, who went to the window, whereupon the deceased began to curse and abuse him, and attempted to draw a pistol from his pocket, when the appellant got the rifle from a corner of the room and shot the deceased twice, the first shot entering the arm and the second shot the back. After the shooting the appellant rode about one hundred and fifty yards down the road, where he was lifted from his mule by some people. About this time the manager of the plantation came up, and the deceased stated to him that he was in the wrong in the difficulty. Upon the objection of the state this testimony was excluded from the consideration of the jury.

Without setting forth in detail all of the testimony both for the state and the defendant, we are satisfied that the jury from this testimony could have found the appellant guilty either of murder or manslaughter, or have acquitted him upon the grounds of self-defense.

Where there is a conflict in the testimony as to the facts of the homicide, the jury are not compelled to believe absolutely the facts as testified to by the witnesses for the state, or those for the defendant. They may believe some of the facts testified to by the state's witnesses and other

facts testified to by the defendant's witnesses. *Martin* v. *State,* 112 Miss. 365, 73 So. 64, and authorities therein cited.

In this case there was ample testimony for the jury to believe that the deceased cursed and abused the appellant, thereby causing the appellant to shoot in the heat of passion. They had a right to disbelieve that part of the appellant's testimony that at the time he shot the deceased was attempting to draw a pistol and shoot him. In other words, from this testimony the jury were justifiable in believing that the appellant shot the deceased in the heat of passion and not in self-defense.

The manslaughter instruction given for the state was as follows:

"The court instructs the jury for the state, that if from all the evidence in the case they believe that the defendant, in the heat of passion, without malice, by the use of a dangerous weapon, without authority of law, and not in necessary, or apparently necessary, self-defense, shot and killed the deceased, Mose Blanchard, then they should find the defendant guilty of manslaughter."

This instruction was erroneous because it omitted the fact that the jury must believe from the evidence "beyond all reasonable doubt."

The defendant, however, in this case was given 14 instructions. In these instructions it was most emphatically stated that before the defendant can be found guilty the jury must believe beyond every reasonable doubt and to a moral certainty his guilt. In these instructions the jury are clearly and forcibly instructed in various and different ways that the defendant must be found not guilty unless his guilt has been proven by the testimony beyond every reasonable doubt and to a moral certainty. The omission in the manslaughter instruction given the state was amply cured by the voluminous instructions given for the defendant, and we are satisfied the jury could not possibly have been misled by the omission in this instruction.

The court was correct in excluding the statement made by the deceased about the time he was taken off of his mule. This statement was not part of the *res gestae,* but was made after the shooting was all over. *Mayes* v. *State,* 64 Miss. 329, 1 So. 733, 60 Am. Rep. 58.

We find no reversible error in the trial of the defendant, and the judgment of the lower court is affirmed.

*Affirmed.*