FAIR, J., DISSENTING:
 

 ¶ 33. Kenneth Weaver gave several different accounts of what happened the afternoon he shot Sara Beard. The story he eventually settled on-the one he testified to at trial-was that Sara blinded him with pepper spray and he, believing she was armed and intended to shoot him, drew his gun and inadvertently shot her while trying to cock it. Weaver requested a jury instruction on his theory of imperfect self-defense-that he shot Sara "without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm."
 
 Brown v. State
 
 ,
 
 222 So.3d 302
 
 , 307 (¶ 21) (Miss. 2017). The majority appears to concede that a reasonable juror could find Weaver shot Sara intentionally,
 
 [5]
 
 but it goes on to
 find Weaver's claim about his fear of her shooting him first to be utterly unsupported by the evidence. Respectfully, I disagree-Weaver's story may be dubious, but it was enough to have the jury instructed on his theories of the case.
 

 ¶ 34. Weaver claimed he and Sara had been at a casino for almost twenty-four hours and had spent quite a bit of time arguing about when they would leave, with Sara wanting to stay. Weaver slept in their vehicle overnight, but she apparently had not slept, or slept quite a bit less than he did, and he said she had been using drugs or "supplements" that caused her to act erratically. That afternoon, they argued in the parking lot for some time, and Sara pulled a shotgun from a rack in the vehicle. Weaver was able to take it from her and unload it. He said he thought she had intended to shoot him and called 911 four times, but the calls kept dropping.
 

 ¶ 35. About an hour later, Sara agreed to go home, but she insisted on driving. She was still angry, though, and shortly after leaving she began driving erratically while repeatedly striking Weaver, who was sitting in the passenger seat beside her (Weaver said this explained the bruising found on his arm after he was arrested). Sara accelerated rapidly, well past 85 miles per hour, and Weaver thought she was deliberately endangering their lives. So he threw the vehicle into park and pulled it over to the side of the road. Weaver said this maneuver was violent enough that he thought it had caused irreparable damage to the vehicle. They continued to argue, and after a few minutes, Sara sprayed him in the face with pepper spray. Weaver testified that, at that moment, he was blinded, but he thought about how she had pulled the shotgun back at the casino and about the .380 pistol she had recently gotten and regularly carried. He believed she was about to shoot him while he was incapacitated, so he drew his own pistol and shot her when his finger slipped off the hammer while trying to cock it.
 

 ¶ 36. The majority holds that Weaver was not entitled to an instruction on imperfect self-defense because "there is not one scintilla of evidence" he could have believed he was in danger and his supposed fear "was not founded on anything she had said or done immediately prior to the shooting." I cannot join in this conclusion.
 

 ¶ 37. "In homicide cases, the trial court should instruct the jury about a defendant's theories of defense, justification, or excuse that are supported by the evidence, no matter how meager or unlikely."
 
 Brown v. State
 
 ,
 
 39 So.3d 890
 
 , 899 (¶ 34) (Miss. 2010). Weaver said Sara had pulled a shotgun on him before they left the casino-about an hour before-and had just deliberately endangered their lives by driving recklessly at a high rate of speed-a few minutes before. Although these were not things she did "immediately" before the shooting, they do not have to be; "evidence of prior violent acts of the victim ... are ... relevant ... to show the defendant's state of mind at the time of the incident and the reasonableness of his use of force."
 
 Jordan v. State
 
 ,
 
 211 So. 3d 713
 
 , 717 (¶ 17) (Miss. Ct. App. 2016) (citing
 
 Richardson v. State
 
 ,
 
 147 So.3d 838
 
 , 842 (¶ 16) (Miss. 2014) ). Weaver said he knew Sara carried a pistol, which she had recently acquired,
 and he said he feared she was going to use it against him like she had tried to use the shotgun. And immediately before the shooting, Sara had blinded him with pepper spray, which prevented Weaver from defending himself as he had in her two previous attempts. This was more than enough to entitle Weaver to an imperfect self-defense instruction, which, again, should have been given if supported by the evidence, "no matter how meager or unlikely."
 
 Brown
 
 ,
 
 39 So.3d at 899
 
 (¶ 34).
 

 ¶ 38. "[E]very accused has a fundamental right to have her theory of the case presented to a jury, even if the evidence is minimal."
 
 Chinn v. State
 
 ,
 
 958 So.2d 1223
 
 , 1225 (¶ 13) (Miss. 2007). Weaver's story may be dubious, but his credibility was an issue for the jury, not an issue for the court. The imperfect self-defense theory was supported by the evidence and should have been submitted to the jury. Our courts "greatly value the right of a defendant to present his theory of the case," "and where the defendant's proffered instruction has an evidentiary basis, properly states the law, and is the only instruction presenting his theory of the case, refusal to grant it constitutes reversible error."
 

 Id.
 

 I would reverse Weaver's conviction and remand for a new trial, and so I dissent.
 

 CARLTON, J., JOINS THIS OPINION.
 

 In earlier versions of the story, Weaver apparently admitted he shot Sara on purpose. Our supreme court has "repeatedly held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the [S]tate or on behalf of the accused."
 
 Mangum v. State
 
 ,
 
 762 So.2d 337
 
 , 346 (¶ 35) (Miss. 2000). The jury can "disregard any portion of the evidence either for the state or for the defendant."
 
 Martin v. State
 
 ,
 
 112 Miss. 365
 
 , 374-75,
 
 73 So. 64
 
 , 66 (1916). Likewise, Weaver was entitled to have the jury instructed on both accident and imperfect self-defense; he had "a right to assert alternative theories of defense, even inconsistent alternative theories."
 
 McTiller v. State
 
 ,
 
 113 So.3d 1284
 
 , 1292 (¶ 26) (Miss. Ct. App. 2013) (quoting
 
 Reddix v. State
 
 ,
 
 731 So.2d 591
 
 , 593 (¶ 9) (Miss. 1999) ).