791 So.2d 875 (2001)
William YOUNG, Appellant
v.
STATE of Mississippi, Appellee.
No. 1999-KA-02014-COA.
Court of Appeals of Mississippi.
July 17, 2001.
*877 Raymond L. Wong, Cleveland, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Jackson, Attorney for Appellee.
Before KING, P.J., LEE, and CHANDLER, JJ.
LEE, J., for the Court:
¶ 1. William Young was convicted of two counts of uttering a forgery. Young now appeals and presents the following issues: (1) whether an undisclosed oral statement of Investigator George Serio constituted a discovery violation and is reversible error, (2) whether the trial court committed error in granting jury instruction D-2A regarding the definition of "intent," (3) whether a statement made by the State during closing argument was a fact not in evidence which constituted reversible error, and (4) whether the trial court committed error in denying Young's motions for a directed verdict and a new trial. We find that these issues are without merit and affirm the lower court.

FACTS
¶ 2. It is not disputed by Young that he cashed two checks belonging to a Michael Shaun Cole. One check was numbered 1560 and was cashed in the amount of $652 at Kroger. The second check bore the number of 1571 and was cashed in the total sum of $643.09 at Jitney Jungle. However, Young does dispute the identity of the person from whom he received the checks and the fact that he knew the checks were stolen at the time he presented them for payment. There were two versions presented at trial regarding the relationship between Cole and Young and how the checks were obtained.
¶ 3. Cole testified that he was notified by his mother that one of his checks had bounced. His mother gave him the check number, whereupon Cole proceeded to examine his checks. Cole explained that at that time he had three-part checks he would print himself. Cole discovered that the bounced check had been a number that he had not used. Cole also determined that there had been four checks that were missing from the stack of checks. Thereafter, Cole went to the bank and the police department and reported the checks stolen.
¶ 4. During the trial, Cole examined his checks which were cashed by Young and declared that his handwriting was not on the checks. Testimony from a forensic scientist who compared a handwriting exemplar from Cole with the writing on the checks cashed by Young also confirmed the handwriting on the front of the checks did not belong to Cole. Additionally, Cole testified that he did not know Young.
¶ 5. On cross-examination Cole conceded that he did not know how the checks became missing from his apartment, and that to his knowledge, Young had never been in his apartment. At the close of the State's case, Young testified on his own behalf.
¶ 6. Young claimed that he had received the checks from Michael Shaun Cole; however, it was not the Michael Shaun Cole that had testified during the trial. Young explained that the Cole with whom he was familiar, lived in Fioranelli Trailer Park and had given him the checks in payment for drugs. Young acknowledged that he had endorsed the checks and that they *878 reflected his social security number, as well as his driver's license number. Young denied knowing that the checks had been forged or that he had any intent to defraud either Kroger or Jitney Jungle when he cashed the checks.

DISCUSSION

I. WHETHER AN UNDISCLOSED ORAL STATEMENT BY INVESTIGATOR GEORGE SERIO CONSTITUTED A DISCOVERY VIOLATION AND IS REVERSIBLE ERROR.
¶ 7. Young contends that during the cross-examination of Investigator George Serio a discovery violation occurred. The violation occurred because it was revealed for the first time at trial that prior to Young making a statement regarding the alleged charges of uttering forgeries, Serio had notified Young of the identity of Cole, the actual owner of the checks. Serio was sure that although he did not mention Cole's identity during the taped statement of Young, that he had given Cole's address to Young because "they lived kind of in the apartment complex across from each other. One of them, upstairs; one of them, downstairs, both apartments facing." Nevertheless, the record does not reveal that the statement made by Investigator Serio was ever recorded or revealed to the State prior to the trial. Young claims that he suffered prejudice due to this statement because it contradicted Young's theory of defense. Young's defense being that he received the checks from a person who identified himself as Michael Shaun Cole and who resided in Fioranelli Trailer Park, not the Michael Shaun Cole who was the proper owner of the checks and who testified at trial. Young asserted that the checks were given to him in payment for drugs he had previously given the man whom he knew as Cole.
¶ 8. We briefly note that the record reflects that there were some handwritten notes from Investigator Serio that were not produced until during the trial. However, Serio's handwritten notes merely duplicated the contents of the recorded statement from Young, as well as what was contained in the report of the investigation. Additionally, this is not the statement that Young contests in his appellate brief. Therefore, there will be no further mention of this written document, and we re-direct our attention to the issue presented by Young.
¶ 9. Young asserts that the oral statement regarding the identity of Cole made by Serio during the trial was a discovery violation because oral statements of a defendant are discoverable. To support his position Young has cited the case of Prewitt v. State, 755 So.2d 537 (Miss.Ct. App.1999), and Uniform Circuit and County Court Rule 9.04(2). Before addressing the case law and Rule 9.04(2), we state the standard of review applied in a situation where there is a possible discovery violation.
"Our standard for review is whether the trial court abused its discretion in its decision. This Court must decide whether the ... court could have entered the order which it did. Under this standard, this Court will affirm unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors."
Graves v. State, 767 So.2d 1049, 1051-52 (¶ 6) (Miss.Ct.App.2000) (citations omitted). Now we focus our attention to the case law that has been cited by Young to support his position.
¶ 10. In Prewitt, the appellate court had to determine whether there had been *879 an error committed by the trial judge when he allowed Cindy Blanks to testify in regard to statements made by the defendant, Charles Prewitt. Prewitt, 755 So.2d at (¶ 10). This Court determined that under Uniform Circuit and County Court Practice Rules Rule 9.04 a defendant's statements are not only to be provided to the defendant when made to law enforcement officers but also when made to a partner in crime. Id. The State had a duty to provide any information, any member of the prosecution had in its possession. Id. However, under Rule 9.04 Prewitt failed to request a continuance and the issue was waived. Id.
¶ 11. In Prewitt v. State, 755 So.2d 537, 541 (¶ 11) (Miss.Ct.App.1999), this Court relied on the holding in Buckhalter v. State, 480 So.2d 1128, 1128 (Miss.1985), to conclude that even if an appellate court determines that there has been a violation of Rule 9.04 it will be considered harmless error if the record reflects that the violation did not cause a miscarriage of justice. While Young's argument regarding the statements of a defendant being discoverable is correct, the actual statement of which he complains is not one from himself. Instead, it deals with a statement made by Investigator Serio. It is for this reason that the statement by Serio regarding the identity of Cole to Young prior to Young's statement involving the charges of two counts of uttering of forgeries is not addressed by Prewitt or Rule 9.04(2). Additionally, the record does not reflect that this statement from Investigator Serio had been preserved in any way prior to him making the statement at trial. Furthermore, there was no unfair surprise as a result of Serio's testimony.
¶ 12. The checks reflected a post office box number at Delta State University, not a trailer park or elsewhere. Moreover, upon counsel's objection, the trial court allowed counsel for Young to interview Investigator Serio and offered Young numerous opportunities to explain the prejudice and to request a continuance. See Box v. State, 437 So.2d 19, 23 (Miss.1983) (Robertson, J. concurring). Young never pursued this course of action. However, though not directly requested, it appears that Young was seeking a mistrial. Nevertheless, it was not necessary for the trial judge to grant a mistrial because of the reasons stated in the above discussion. Therefore, the trial judge did not abuse his discretion and this issue is without merit.

II. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTION D-2A REGARDING THE DEFINITION OF "INTENT."
¶ 13. Young argues that the trial judge erred in granting jury instruction D-2A. Young contends that instead of granting jury instruction D-2A the trial judge should have granted jury instruction D-2 which was initially submitted by him regarding this issue and contained a proper definition of intent. Jury instruction D-2A instructed the jury as follows regarding intent: "The Court instructs the jury that intent is a state of mind existing at the time a person commits an offense. The mind of an alleged offender may be read from his acts, conduct, and inferences fairly deducible from all the circumstances." We now compare an explanation of intent as it reads in Washington v. State, 753 So.2d 475, 478 (¶ 15) (Miss.Ct. App.1999):
"Intent is an emotional operation of the mind, and it is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. Defendant's intention is manifested largely by the things he does." Stated differently, "[u]nless one expresses his intent, the only method by which intent may be *880 proven is by showing the circumstances surrounding the incident."
Washington, 753 So.2d at (¶ 15) (emphasis in original) (citations omitted). Although Instruction D-2A does not use the identical language that is used in Washington, it does embody the essence of the statements regarding intent and was a proper instruction. In Nicholson on Behalf of Gollott v. State, the Mississippi Supreme Court held that when a jury instruction provides a correct definition the trial court is not under a duty to give cumulative instructions. Nicholson on Behalf of Gollott v. State, 672 So.2d 744, 752 (Miss.1996). Since jury instruction D-2A was proper, to require any additional instructions on intent would only be cumulative and is not required. Therefore, this issue is without merit.

III. WHETHER A STATEMENT MADE BY THE STATE DURING CLOSING ARGUMENT WAS A FACT NOT IN EVIDENCE AND CONSTITUTED REVERSIBLE ERROR.
¶ 14. Young asserts that he received an unfair trial when the State asserted in closing argument that Debbie Latham, Young's girlfriend, wrote the checks, because this was a fact not in evidence.
¶ 15. Attorneys for the State and defense are usually given wide latitude during closing arguments. McGilberry v. State, 741 So.2d 894, 910 (¶ 44) (Miss.1999). A prosecutor is restricted to asserting facts placed into evidence, as well as any conclusions or deductions that can plausibly be drawn therefrom, and application of law to facts. McGilberry, 741 So.2d at (¶ 44). "Even if the comment was improper, the test used to determine if reversal is required is `whether the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice.'" Id. at (¶ 50). In Young's case the statement made by the prosecution was a conclusion or deduction that was based on testimony from Investigator Serio and the forensic scientist.
¶ 16. Serio testified that at one time Young and Debbie Latham had lived together, and that he had a question about whether she had been involved in the checks. Serio obtained handwriting exemplars from Latham. These exemplars were reviewed by forensic document examiner Frank Hicks. Hicks testified as follows regarding the handwriting exemplar of Latham:
The only opinion issued concerning this subject was that there were indications that the writer of State's Exhibit No. 4, submitted to me as the known writing of Debbie Latham, may not have prepared the writing on the front of both State's Exhibit No. 1 and State's Exhibit No. 2. The strength of the opinion warranted in this comparison was limited by the appearance of the known writing. This writing was written very slowly, has heavy pen pressure, and has characteristics that are indicative of intentionally disguised handwriting.
Since this testimony was contained in the record, the statement made by the prosecution was within the wide range allowed in a closing argument, and this issue is without merit.

IV. WHETHER THE TRIAL COURT COMMITTED ERROR IN DENYING YOUNG'S MOTIONS FOR DIRECTED VERDICT AND A NEW TRIAL.
¶ 17. Young asserts that the trial court erred in denying his request for a directed verdict because the State failed to prove beyond a reasonable doubt each element of the indicted offenses. In particular, *881 Young argues that the State failed to prove that when he cashed the checks he knew the checks were forged and that he intended to defraud Kroger or Jitney Jungle. Objections to the denial of a directed verdict challenge the sufficiency of the evidence. Our standard for reviewing challenges to convictions based on sufficiency of the evidence is well established.
¶ 18. When considering a motion for a directed verdict, this Court must consider the evidence introduced in the light most favorable to the State, accepting all evidence introduced by the State as true, together with all reasonable inferences therefrom. McClain v. State, 625 So.2d 774, 778 (Miss.1993). If there is sufficient evidence to support a guilty verdict, the motion for a directed verdict must be overruled. Smith v. State, 646 So.2d 538, 542 (Miss.1994) (citations omitted). To test the sufficiency of the evidence,
[W]e must, with respect to each element of the offense, consider all of the evidence not just the evidence which supports the case for the prosecutionin the light most favorable to the verdict. The credible evidence which is consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Wetz v. State, 503 So.2d 803, 808 (Miss. 1987) (citations omitted).
¶ 19. The crimes of uttering a forgery which Young is charged with are defined in Mississippi Code Annotated Section 97-21-59 (Rev.2000), and reads as follows:
Every person who shall be convicted of having uttered or published as true, and with intent to defraud, any forged, altered, or counterfeit instrument, or any counterfeit gold or silver coin, the forgery, altering, or counterfeiting of which is declared by the provisions of this chapter to be an offense, knowing such instrument or coin to be forged, altered, or counterfeited, shall suffer the punishment herein provided for forgery.
¶ 20. During the trial of this matter, the State called the owner of the checks, Michael Shaun Cole to testify. Cole stated that the checks cashed by Young belonged to him. He substantiated this contention by explaining that the two checks had been printed on his computer and reflected his mailing address while residing at Delta State University. Cole explained that he was first made aware that the checks were missing when he discovered he had an overdraft at the bank. Thereafter, Cole reported this to the police department. Additionally, Cole testified that he did not issue the checks to Young. In fact, he did not even know Young. Furthermore, a forensic scientist from the Mississippi Crime Lab testified that he had reviewed handwriting exemplars taken from Cole and that Cole was not the one that completed the information on the front of the check. We also note that it was revealed that Young lived with his girlfriend at the time he cashed the checks. The forensic scientist explained that he felt her handwriting in an exemplar had been disguised.
¶ 21. Young testified that he endorsed and cashed the checks at Kroger and Jitney Jungle. At trial, the State observed that one of the checks had been made out for $643.09. Young acknowledged that Cole did not owe him some odd cents for *882 the cocaine, but he took the check because he was owed the money and he needed it. Additionally, Young denied that Investigator Serio informed him that the checks involved a Michael Cole that lived on Court Street in the apartments across from him. Furthermore, there were contradictions in Young's testimony.
¶ 22. In a previously recorded statement of Young he stated as follows:
Q: And Michael Cole gave you these checks?
A: Yes sir. He sure did.
Q: So you are saying he made out these checks to you?
A: Yes sir.
Q: And he signed his name on there or did you sign them?
A: No sir. He signed them.
Q: All this writing on these checks is his.
A: Yes sir, except on the back where I signed my name....
During the trial of this matter, Young asserted that he did not see Cole write the checks out, and that he just assumed that Cole had signed the checks. Giving the State the benefit of all favorable inferences as we are required to do, we determine that there was sufficient evidence to deny a directed verdict in favor of Young. We must now review the aforementioned evidence and apply the standard for a motion for a new trial to see if error was committed by the trial judge.
¶ 23. In Benson v. State, 551 So.2d 188, 193 (Miss.1989), the Mississippi Supreme Court provided the following explanation of when it would grant a new trial:
This Court will not order a new trial "unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). Factual disputes are properly resolved by the jury and do not mandate a new trial. Temple v. State, 498 So.2d 379, 382 (Miss. 1986).
A motion for a new trial is within the sound discretion of the trial court. Burge v. State, 472 So.2d 392, 397 (Miss.1985). It must be kept in mind that any discrepancies were properly resolved by the jury as fact finder because questions regarding weight and worth of witness testimony or witness credibility are for the jury to settle. Eakes v. State, 665 So.2d 852, 872 (Miss.1995). The Court accepts as true all evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Id.
¶ 24. It was for the jury to weigh the credibility of the witnesses and to resolve any discrepancies in the testimony. Reasonable persons could have found from the direct and circumstantial evidence presented at the trial that Young knew the checks were forgeries and had the intent to defraud Kroger and Jitney Jungle. The record does not disclose that the verdict is so contrary to the weight of the testimony presented that to uphold the verdict would sanction an unconscionable injustice. We, therefore, find no reversible error committed by the trial court.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY OF CONVICTION OF TWO COUNTS OF UTTERING A FORGERY AND SENTENCE OF THREE YEARS PER COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SENTENCES IMPOSED IN THE TWO COUNTS TO RUN CONCURRENTLY AND CONSECUTIVELY TO ANY AND ALL SENTENCES *883 PREVIOUSLY IMPOSED, AND PAY RESTITUTION IN THE AMOUNT OF $652 AND $643.09 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO BOLIVAR COUNTY.
McMILLIN, C.J., KING, P.J., PAYNE, BRIDGES, THOMAS, IRVING, MYERS AND CHANDLER, JJ., CONCUR. SOUTHWICK, P.J., CONCURS IN RESULT ONLY.