ISHEE, J.,
for the Court:
¶ 1. In 2011, Mike McTiller was convicted in the Washington County Circuit Court of aggravated assault. He was sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC), with fifteen years to serve and five years of post-release supervision (PRS). He also received a sentence enhancement as a convicted felon in possession of a firearm and was further sentenced to five years in the custody of the MDOC, with the two sentences to run concurrently. Aggrieved, McTiller now appeals claiming (1) the circuit court erred by granting a jury instruction regarding McTiller’s alleged flight from the scene of the crime; (2) the circuit court erred by granting a jury instruction regarding the defense of accident that was an incomplete statement of the law; (3) the circuit court erred by refusing a jury instruction regarding self-defense; (4) McTiller was prejudiced by the circuit court’s prohibition against the defense counsel’s mention of accident and self-defense during voir dire and opening statements; (5) the evidence was insufficient to support the verdict; and (6) the weight of the evidence does not support the verdict. Finding reversible error, we reverse and remand this case for a new trial consistent with the findings of this opinion.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. In August 2010, Angelo Boykins sent a text message to Corina Pam’s[1] cell phone asking if Corina’s sister, Shawanda Pam, a beautician, was back from a trip and would be available to style Boykins’s hair. Corina, who was in a relationship with McTiller and had a child with McTil-ler, had given her phone to McTiller to use. McTiller called Boykins asking who was calling Corina and why. McTiller told Boykins he was calling for Shawanda. McTiller stated that Shawanda was back in town.
¶ 3. Boykins went to the trailer where Shawanda, Corina, their mother, Ruby Preston, and their stepfather, Phil Gibson, lived. Shawanda also ran her beautician business at the trailer. While Shawanda was styling Boykins’s hair, McTiller entered the trailer and immediately walked to the back of the trailer where Corina was located. Boykins and McTiller did not speak during this time. Several minutes later, McTiller, Corina, and their baby left with several other relatives to run errands.
¶ 4. Sometime thereafter, while Shawan-da was still styling Boykins’s hair, McTil-ler returned to the trailer with his cousin, Jemarcus Johnson. Boykins testified that McTiller entered the trailer and began accusing Boykins of arriving at the trailer to see “Wendy,” not Shawanda. Boykins responded that he had a standing appointment with Shawanda at that time every week and that he did not know anyone named Wendy. Boykins later stated he *1288 was unaware that Corina also used the name Wendy.
¶ 5. According to Boykins, following his response to McTiller, McTiller reached into his back pocket, pulled out a gun, and started saying, “Oh you don’t know her, you don’t know her?” Boykins then stated that he rushed McTiller to prevent him from shooting the gun. However, McTil-ler testified that Boykins became aggressive when McTiller asked him if he had been calling for Wendy. McTiller testified that Boykins had reached into his own pocket first, and that McTiller reached into his pocket to defend himself with a knife he had in his pocket. McTiller claims that the knife became caught in his pocket and he was unable to get it out, but that Boykins pulled out the gun, causing McTiller to grab Boykins by the wrist in self-defense.
¶ 6. Shawanda witnessed the fight. She testified that McTiller began the hostile conversation with Boykins regarding his phone call to Wendy, and that Boykins stood up in response to McTiller’s question. After that, Shawanda stated McTil-ler reached in his pocket, but she could not see what he had pulled out, Shawanda noted that Boykins then rushed McTiller, and she heard the first shot but still did not see the gun. She heard two to three more shots as she was leaving the room.
¶ 7. Johnson testified that he picked up McTiller to return to the trailer to retrieve some items for the baby that McTiller had mistakenly left behind when they had gone to run errands. Johnson further stated that when he arrived to pick up McTiller, McTiller walked to Johnson’s car, and Johnson did not see anything bulging from any of McTiller’s pockets. He testified that if McTiller had a gun hidden in his pocket, he would have noticed it when he initially picked up McTiller. Johnson further testified that after the two men arrived at the trailer, he witnessed Boykins rush McTiller inside the trailer immediately, and then heard the first gunshot. He took cover, but heard two more shots before peering into the room. He then saw Boykins and McTiller struggling over possession of the gun.
¶8. Gibson testified that he heard the shooting but did not witness the altercation. Gibson stated that when the shooting stopped, he entered the room and saw that McTiller had Boykins in a headlock with a pistol pointed at Boykins’s head. After unsuccessfully attempting to break up the fight, Gibson left the room and instructed Shawanda to call the police. On his way back into the room, he saw McTil-ler meet Boykins, who was coming down the hall with the pistol. Gibson stated that McTiller followed Boykins and asked for the gun, but that Boykins declined. Gibson noted that he told McTiller not to go anywhere, but that McTiller walked away from the trailer before the police arrived.
¶ 9. Shawanda further testified that after the incident, Boykins took the gun and walked out of the house to his vehicle. She stated he sat in his vehicle crying and saying, “I can’t believe I was shot; I can’t believe this happened.” Gibson soon convinced Boykins to give him the gun and to come back into the trailer to wait for the authorities to arrive. The record shows that Boykins was shot once in the left shoulder and was taken by ambulance to the Delta Regional Medical Center in Greenville, Mississippi.
¶ 10. Corina testified that McTiller came to her after the incident claiming he needed to go to the hospital. McTiller testified that after the incident, he walked to his sister’s house and asked his aunt to drive him to Delta Regional Medical Center in Greenville for medical attention. His aunt complied, but en route to the hospital, the vehicle was stopped, and *1289 McTiller was arrested for aggravated assault.
¶ 11. A jury trial took place in August 2011. The State presented an ore tenus pretrial motion requesting that all mention of accident and self-defense be prohibited during voir dire and opening statements. The circuit court granted the State’s motion. At trial, Boykins, Corina, Shawanda, Johnson, Gibson, and McTiller all testified. At the close of the trial, the circuit court granted jury instructions which included the State’s offered instruction regarding McTiller’s flight from the scene of the crime. The circuit court also granted the State’s instruction referencing McTiller’s accident defense but refused McTiller’s offered instruction regarding self-defense.
¶ 12. After deliberations, the jury returned a verdict finding McTiller guilty of aggravated assault. McTiller received his sentence, and his defense counsel quickly filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied.
DISCUSSION
I. Flight Instruction
¶ 13. In his first argument on appeal, McTiller asserts that the circuit court erred in granting a flight instruction to the jury. The jury instruction in question reads:
The [cjourt instructs the [jjury that “flight” is a circumstance from which guilty knowledge and fear may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the [defendant, Mike McTiller, III, did flee or go into hiding, such flight or hiding is to be considered in connection with all other events in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt of shooting Angelo Boykin, or whether it was cause by other things[,] and give it such weight as you think it is entitled to in determining the guilt or innocence of the [defendant, Mike McTiller, III.
¶ 14. We give “abuse-of-diseretion deference to the trial judge’s decision” with regard to giving or refusing jury instructions. Flowers v. State, 51 So.3d 911, 912 (¶ 5) (Miss.2010). However, “an instruction that flight may be considered as a circumstance of guilt or guilty knowledge is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge.” States v. State, 88 So.3d 749, 757-58 (¶ 36) (Miss.2012) (quoting Liggins v. State, 726 So.2d 180, 183 (¶ 10) (Miss.1998)). The Mississippi Supreme Court outlined the following two-prong test with regard to flight instructions: “(1) Only unexplained flight merits a flight instruction; and (2) flight instructions are to be given only in cases where that circumstance has considerable probative value.” Id. at 758 (¶ 36) (quoting Brown v. State, 690 So.2d 276, 294 (Miss.1996)).
¶ 15. The supreme court has upheld the grant of flight instructions in numerous eases. For instance, a flight instruction was affirmed in Tavares v. State, 725 So.2d 803, 807 (¶ 15) (Miss.1998), which involved a woman who failed to appear in court after being subpoenaed to the courthouse. When authorities obtained a warrant for her arrest, she sped away from the police officers and engaged in a high-speed chase. Id. at 807 (¶ 14). Likewise, in Bougon v. State, 883 So.2d 98, 104 (¶ 14) (Miss.Ct.App.2004), a flight instruction was upheld in the trial of a murder suspect. The suspect was questioned by authorities twice and then advised by neighbors and his girlfriend that investigators had come to his home to collect evidence. Id. at 101 (¶ 4). Subsequently, the suspect did not return to his home for some time and was *1290 later apprehended by authorities. Id. at 101-102 (¶ 5).
¶ 16. Here, McTiller admitted that he left the scene of the crime. Nonetheless, “evidence of flight is inadmissible when independent reasons exist to explain the flight.” Tavares, 725 So.2d at 806 (¶ 11) (citing Fuselier v. State, 468 So.2d 45, 56-57 (Miss.1985)). The record reflects that McTiller asked his aunt to drive him to a nearby hospital in Greenville for medical attention. While McTiller was unsure if he was injured, the evidence shows that he had blood on his clothing after the shooting. Corina corroborated this testimony and asserted that she was in the vehicle with McTiller and his aunt on the way to the hospital when the vehicle was pulled over and McTiller was arrested.
¶ 17. McTiller’s belief that he was in need of medical attention serves as an independent reason for his retreat from the scene of the crime, thus negating the idea that his flight was unexplained. Furthermore, evidence of McTiller’s retreat is not inherently probative of guilt or guilty knowledge. As such, we find reversible error in the grant of a flight instruction to the jury.
II. Accident and Self-Defense
A. Accident Instruction
¶ 18. In McTiller’s next claim on appeal, he argues that the circuit court erred by refusing his proposed jury instruction on an accident or self-defense defense. McTiller’s proposed jury instruction reads:
The [cjourt instructs the jury that if there is a reasonable doubt arising out of the evidence or lack of evidence that on the occasion of the shooting of Angelo Boykins that the defendant, Mike McTil-ler, III, did not intend to, and was not attempting to, injure said victim or do[ ] him any great bodily harm during an accidental and unintentional discharging of the gun which struck and injured Angelo Boykins, then you must find the defendant, Mike McTiller, III, not guilty.
By contrast, the instruction the circuit court granted to the jury reads:
The [cjourt instructs the [jjury that in order to justify an aggravated assault on the plea of accident or misfortune, the [djefendant must be doing a lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent. Under the laws of the State of Mississippi, carrying a concealed weapon is an unlawful act. If you find, beyond a reasonable doubt, that the [djefendant was in possession of a concealed weapon, then the defense of accident or misfortune would not apply in this case. If you find, beyond a reasonable doubt, that the [djefendant was doing a lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent, then the aggravated assault would be justified on the plea of accident or misfortune[,j and you must find the [djefendant not guilty.
¶ 19. Again, the grant or refusal of a jury instruction is reviewed for abuse of discretion. Flowers, 51 So.3d at 912 (¶ 5). However, “[wjhether or not a killing was the result of accident [orj misfortune is a question for the jury to decide after proper instruction.” Miller v. State, 677 So.2d 726, 730 (Miss.1996) (quoting Day v. State, 589 So.2d 637, 643 (Miss.1991)). The law regarding accident and misfortune lies in Mississippi Code Annotated section 97-3-17 (Rev.2006) and states:
The killing of any human being by the act, procurement, or omission of another shall be excusable:
(a) When committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent;
*1291 (b) When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation;
(c) When committed upon any sudden combat, without undue advantage being taken, and without.any dangerous weapon being used, and not done in a cruel or unusual manner.
While this statute references homicide, we have held it a natural extension that these principles “should apply to make an assault that does not result in death excusable under the same circumstances.” Rogers v. State, 994 So.2d 792, 802 (¶ 41) (Miss.Ct.App.2008). Furthermore, these three subsections may be read separately and applied separately. Miller, 677 So.2d at 731. Hence, the jury should have been privy to all three subsections of the statute to determine if any of the three subsections applied to McTiller’s case.
¶ 20. The supreme court addressed a similar case in Scott v. State, 446 So.2d 580 (Miss.1984). In Scott, the defendant, Vernon Lee Scott, asserted self-defense when claiming he and the victim, W.C. Turner, had engaged in an altercation after the victim pulled out a gun. Id. at 582. Later, the gun discharged twice, accidentally killing the victim. Id. At the close of the trial, Scott’s defense counsel was granted instruction D-4 regarding self-defense which included the elements of accident, misfortune, heat of passion, and any sudden and sufficient provocation. Id. at 583. However, the circuit court also granted the State’s instruction S-l, which stated the following:
The [cjourt instructs the jury that the killing of a human being is an excusable homicide if, the Defendant acts (sic) which caused the death of W.C. Turner, was a result of sudden combat, without taking undue advantage and without the use of a dangerous weapon and not in a cruel and unusual manner. If you find from the evidence beyond a reasonable doubt that W.C. Turner’s death was caused by being shot with a gun wielded by the Defendant, Vernon Lee Scott, and that it was not in necessary self-defense, and it was not in sudden combat, and he the said Vernon Lee Scott did take undue advantage, then you shall find the Defendant guilty as charged by writing your verdict on a separate sheet of paper.
Id. As such, instruction S-l completely failed to mention accident, misfortune, heat of passion, or. any sudden and sufficient provocation.
¶ 21. In determining whether there was reversible error pursuant to the jury instructions, the supreme court concluded that although instruction D-4 mentioned all of the factors of self-defense, “it [did] not remedy the defect in S-l. This is so because S-l [was] conclusive in nature and therefore in hopeless conflict with an instruction like D-4 which list[ed] other occasions in which a homicide may be excusable.” Id.
¶22. Nonetheless, we have held that a trial court is not required to present jury instructions sua sponte or suggest jury instructions' for the parties to give. Westbrook v. State, 29 So.3d 828, 832-33 (¶ 12) (Miss.Ct.App.2009). Likewise, McTiller’s counsel failed to raise all of the elements of accident in a proffered jury instruction and did not object to jury instruction S-l. As such, McTiller claims that he received ineffective assistance of counsel due to these failures.
¶ 23. We -have upheld claims for ineffective assistance of counsel in the face of inadequate jury instructions. See Blunt v. State, 55 So.3d 207, 210-12 (¶¶ 13-17) (Miss.Ct.App.2011). It is well settled that the standard of review when discussing a claim of ineffective assistance of counsel is *1292 the two-prong analysis originally set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prove ineffective assistance of counsel, McTiller must show the following: “First, ... that counsel’s performance was deficient.... Second, ... that the deficient performance prejudiced the defense.” Liddell v. State, 7 So.3d 217, 219 (¶6) (Miss.2009) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). We have reversed criminal convictions on the basis of ineffective assistance of counsel due to the introduction of or lack of objection to jury instructions that “[are] contradictory and confusing and do[ ] not correctly state the applicable law.” Blunt, 55 So.3d at 211 (¶ 14) (citation omitted).
¶ 24. We find the case at hand warrants such a reversal. The jury instruction granted by the circuit court did not correctly state the applicable law on accident since it lacked all elements present in Mississippi Code Annotated section 97-3-17. As stated by the supreme court in Scott, “[t]he instruction completely failfed] to mention accident, misfortune, the heat of passion, or any sudden and sufficient provoation.” Scott, 446 So.2d at 583. Additionally, McTiller’s counsel failed to object to the faulty jury instruction given and did not offer an independent instruction on the law of accident. We find this to be reversible error and ineffective assistance of counsel.
B. Self-defense Instruction
¶ 25. McTiller also argues the refusal of his jury instruction regarding self-defense was improper. The circuit court refused the instruction on the basis that it was contradictory to his accident defense. The instruction in question read as follows:
The [c]ourt instructs the jury that to make an assault justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or do him some bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.
¶ 26. The supreme court has stated that “[a] criminal defendant has a right to assert alternative theories of defense, even inconsistent alternative theories.” Reddix v. State, 731 So.2d 591, 593 (¶ 9) (Miss.1999) (citation omitted). Additionally, “in homicide cases, the trial court should instruct the jury about a defendant’s theories of defense, justification, or excuse that are supported by the evidence, no matter how meager or unlikely.” Brown v. State, 39 So.3d 890, 899 (¶ 34) (Miss.2010) (citation omitted).
¶27. In Brown, Johnny Brown was convicted of murdering Violar Bracey by shooting her. Id. at 891 (¶ 1). At the close of trial, Brown’s defense counsel proffered an instruction regarding self-defense and accident. Id. at 899 (¶ 34). The trial judge denied the instruction, claiming that since he had already granted one of the State’s instructions regarding self-defense, introducing an accident instruction would be contradictory. Id. However, the trial court failed to weigh the accident instruction based on the evidence. Id. The supreme court reversed the conviction and ordered a new trial due, in part, to the improper refusal of the accident instruction. The supreme court found that a proper evidentiary basis existed to present the accident theory to the jury through the defense’s proffered jury instruction. In so concluding, the supreme court stated: “[I]n today’s case, we cannot find harmless *1293 error in the trial judge’s failure to give an accidental-shooting instruction to the jury. Certainly, a properly worded accidental-shooting jury instruction may have been the difference between a guilty verdict and a non-guilty verdict.” Id. at 900 (¶ 38).
¶ 28. Similarly, McTiller’s requested self-defense jury instruction was refused as being contradictory to the accident instruction granted by the circuit court. However, McTiller had testified that he saw Boykins reach into his pocket during their verbal altercation and thought Boykins was about to pull out a gun. Additionally, Shawanda testified that while she heard the first shot, she did not see a gun and could not definitively state who pulled out the gun first. Finally, several witnesses stated that Boykins rushed McTiller first. This evidence was sufficient to support a self-defense jury instruction. As such, it was reversible error for the circuit court to refuse McTiller’s proposed self-defense jury instruction.
C. Prohibition Against References to Self-defense and Accident During Voir Dire and Opening Statements
¶ 29. Finally, McTiller argues on appeal that the circuit court erred by granting the State’s pretrial ore tenus motion that McTiller’s defense counsel be prohibited from mentioning the theories of self-defense and accident during voir dire and opening statements. The proper standard for reviewing voir dire is abuse of discretion. See Jackson v. State, 791 So.2d 880, 835-36 (¶ 21) (Miss.2001). When analyzing opening statements, the question is “whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.” Anderson v. State, 62 So.3d 927, 939 (¶ 39) (Miss.2011) (citation omitted). Uniform Rule of Circuit and County Court 10.03 states that the “defense may make an opening statement to the jury at the conclusion of the [SJtate’s opening statement ... [The opening] statement shall be confined to a statement of the defense and the facts the defendant expects to prove in support thereof.” Additionally, as previously noted, “[a] criminal defendant has a right to assert alternative theories of defense, even inconsistent alternative theories.” Reddix, 731 So.2d at 593 (¶ 9) (citation omitted).
¶ 30. Here, McTiller’s defense counsel supported McTiller’s argument to allow mention of self-defense and accident during voir dire and opening statements by reminding the circuit court that McTiller planned on testifying on his own behalf. As such, the defense argued that it would lay more than the necessary groundwork to allow the introduction of self-defense and accident theories during voir dire and opening statements. However, the circuit court countered by stating:
I’m going to stick with my ruling. Until you lay that predicate in proof, I don’t think we can unring the bell by you arguing self[-]defense[,] and then for some reason [the defendant] doesn’t get on the stand and doesn’t testify. I think it’s going to cause confusion with the jury.
¶ 31. We agree with the circuit court, and have specifically addressed this issue for future reference in a new trial. Although McTiller testified on his own behalf during the trial, the circuit court' had no way of guaranteeing that the testimony would occur. By allowing self-defense and accident to be introduced prior to McTil-ler’s testimony, the jury would have been privy to a defense theory that may or may not have been supported by the facts depending on McTiller’s testimony. Such a ruling does not warrant reversible error. This issue is without merit. Additionally, given our reversal of this case on other *1294 grounds, we decline to address McTiller’s remaining arguments regarding sufficiency and weight of the evidence.
¶ 32. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
LEE, C.J., AND JAMES, J., CONCUR. IRVING, P.J., BARNES AND FAIR, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., AND MAXWELL, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. ROBERTS, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.

. Corina Pam also goes by the name Wendy.