# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CT-00331-SCT

*ALVIN BROWN*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/05/2014 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE McMILLIN |
| |     GEORGE T. HOLMES |
| | ALVIN BROWN (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 05/04/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. A Hinds County jury found Alvin Brown guilty of manslaughter and four counts of aggravated assault. The circuit court sentenced Brown to twenty years in the custody of the Mississippi Department of Corrections for manslaughter and ten years for each aggravated assault conviction, with the aggravated assault sentences to run concurrently with each other and consecutively to the manslaughter sentence.

¶2. Brown appealed and we assigned his case to the Mississippi Court of Appeals. The Court of Appeals reversed and remanded for a new trial as to only the aggravated assault convictions due to a variance between the indictment and the jury instructions. *Brown v. State*, 2016 WL 3512493, at *9 (¶ 41) (Miss. Ct. App. June 28, 2016). The Court of Appeals held that Brown's remaining assignments of error were without merit and affirmed his manslaughter conviction. *Id.* at **5-7, 10 (¶¶ 26, 29, 31, 42-44).

¶3. On November 16, 2016, Brown filed a pro se petition for writ of certiorari. On November 22, 2016, Brown filed another petition for writ of certiorari through counsel. On January 20, 2017, the Court granted the petitions for writ of certiorari to consider the issue of whether the trial court had erred in giving an imperfect self-defense jury instruction. Because the Court of Appeals' affirmance of the trial court's decision to give the State's imperfect self-defense instruction conflicts with our earlier cases affirming the refusal of imperfect self-defense instructions when requested by defendants, we also reverse Brown's manslaughter conviction.

## FACTUAL BACKGROUND

¶4. In the early morning hours of September 20, 2009, a shooting occurred at the Birdland nightclub on Farish Street in Jackson, Mississippi. Yatasha Johnson died as a result of being shot that night. Four others, Anastasia Murdock, Malcolm Smoot, Latonya Hopson King and Derrick Walker, were shot but survived.

¶5. It is undisputed that Albert Coleman, better known as "Westside Al," and Brown, while at the club that night, started fighting, with Coleman, a much larger man, throwing the

2

first punch. However, the events immediately preceding the fight and during the fight, which culminated in several shots being fired in a crowded club, are largely disputed.

¶6.     Brown was the sole witness for the defense. Brown, who was nineteen years old at the time, testified that he and his cousin, Malcolm Smoot, had gone to Birdland that night to look for women. Brown testified that he had bought a drink for a woman named Eddwantya Epps. As Brown and Epps were speaking, Coleman interrupted and confronted Epps. Brown testified that the music was loud and he could not hear the details of the confrontation between Coleman and Epps. Brown testified that Coleman appeared angry, so he turned to walk away and Coleman grabbed him. Brown tried to walk away again, but Coleman punched him and they began fighting.

¶7.     Brown explained that he used his left hand to hold Coleman's shirt to stay close so he could not be hit as hard and used his right hand to defend himself. During the fight, Brown testified that Coleman pulled a pistol from his crotch area. Brown testified that he wrestled with Coleman for the pistol. Meanwhile, Coleman was firing the pistol. Brown testified that his finger did not touch the trigger nor was it near the trigger while the two men were wrestling for the pistol. Brown recalled two or three shots being fired before he was shot in the head by Coleman. The next thing Brown recalled was waking up in the hospital several days later. Brown denied possessing a weapon while in the club and claimed that he did not own a weapon.

¶8.     The State offered evidence that Coleman had initiated the fight with Brown, Brown had pulled the pistol, and Brown had fired the pistol in the club.

¶9.    Coleman, who lived in Little Rock, Arkansas, at the time, testified that he had gone to Birdland that night with several of his friends to celebrate his birthday.[1] Upon arrival, Coleman was greeted by a group of men he knew from his old neighborhood in Jackson. Coleman testified that they were happy to see him and he shook their hands. However, Coleman testified that when he reached out to shake Brown's hand, Brown screamed, "Westside, you know I don't f*** with you." Brown continued, "Man, you just don't know. I ain't no little boy no more, you know." Coleman testified that he knew Brown only as a child from Coleman's old neighborhood, and that Brown had been around fourteen years old when Coleman had moved from Jackson to Little Rock. Coleman claimed he did not know what had prompted Brown's reaction and that he did not have a problem with him. Coleman told Brown just to leave him alone and Brown walked away. Coleman told his friends, "Man, I don't know what's up with [Brown]. He just really got something on his mind about me."

¶10.    Coleman testified that, sometime later, Brown returned and got in Coleman's face trying to intimidate him. Coleman set his drink down and asked Brown, "Man, what's really on your mind[?]" Brown then turned his head, and Coleman punched him. Coleman claimed he first heard a shot when he punched Brown. Coleman testified that he looked down and saw Brown had a pistol in his hand. Coleman testified that he pushed Brown's hand down while Brown was trying to shoot. After Brown had fired several shots, Coleman testified he was able to wrestle the gun from Brown. Once Coleman gained control of the gun, he placed

_____

[1] Coleman was forty-five years old at the time of trial.

4

it on the bar. Brown tried to run, and Brown said, "[Y]a'll need to catch him," and then several people started beating Brown. Coleman immediately left the scene and went back to Little Rock in the early morning hours. Coleman claimed he spoke to a Jackson Police Department detective and gave a statement to police in Little Rock the next day.

¶11.    Antonio Moore, a bartender at Birdland, testified that he saw Coleman punch Brown, and that Brown had pulled a gun. Moore then observed Coleman and Brown struggling over the gun. Moore testified that Coleman ultimately gained control of the gun and put it on the bar.

¶12.    John Greer, a DJ at Birdland, testified that he did not see who pulled the gun, but he saw Brown and Coleman struggling over the gun, with each having their hands on it. Greer testified that, when the struggling was over, he saw Coleman with the gun.

¶13.    Epps, who was near Brown and Coleman at that time, testified that she saw Brown and Coleman arguing and beginning to fight. Epps testified that she observed Brown with a gun at his side, that he pulled the gun, and he and Coleman began wrestling over the gun. During the struggle, Epps testified that shots were going off rapidly. Epps also testified that she saw Brown point the gun at Coleman's chest at some point. Epps saw Coleman eventually place the gun on the bar.

¶14.    Jacob Burchfield, a gunshot residue analyst, testified that Brown's right palm and the back of his left hand tested positive for gunshot residue, meaning that Brown had fired the gun or handled something with gunshot residue on its surface such as the gun, or that

5

Brown's hands were in close proximity at the time the gun was discharged. Coleman never was tested, because he immediately left Jackson for Little Rock after the shooting.

¶15. Dr. John Porter, a surgeon at the University of Mississippi Medical Center, testified that he treated Brown. Dr. Porter determined that Brown had not been shot. Dr. Porter diagnosed his injuries as being blunt assault and a laceration.

*Jury Instructions*

¶16. Brown did not argue self defense at trial. Brown maintained as his defense that he was not the person who discharged a weapon on September 20, 2009. The trial court duly instructed the jury as to Brown's theory of his defense. The State requested an imperfect self-defense jury instruction. Over the objection of Brown, the trial court granted and gave the State's requested instruction. With respect to murder and the lesser included offense of manslaughter, i.e., imperfect self-defense, the trial court instructed the jury as follows:

> The Court instructs the jury that the defendant Alvin Brown has been charged in the indictment with the offense of murder. The Court instructs the jury that if you find from the evidence in this case that the defendant Alvin Brown on or about September 20, 2009 in the First Judicial District of Hinds County, Mississippi did purposefully and knowingly and feloniously kill Yatasha Johnson while in the commission of an act imminently dangerous evidencing a depraved heart without the authority of law and not in necessary self-defense, then you shall find the defendant Alvin Brown guilty of murder. If the State has failed to prove any one or more of the elements beyond a reasonable doubt, then it shall do defendant [sic] -- then you shall find the defendant not guilty of murder.

> The Court instructs the jury that if you unanimously find that the State has failed to prove all the elements of the crime of murder, you may then proceed in your deliberations to consider the lesser charge of manslaughter. However, it is your duty to accept the law given to you by the Court, and if the facts and the law warrant a conviction of the crime of murder, then it is your duty to make such finding and not be influenced by your power to find the lesser

6

offense. This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge, but it does justify a verdict of a lesser crime. **The Court instructs the jury that if a person kills another under the actual bona fide belief that such a killing is necessary in order to protect themselves from great bodily harm or death but that such belief is not reasonable under the circumstances, then there is no malice aforethought, and the killing is not murder but at most is the crime of manslaughter. Therefore, if you find from the evidence in this case that on September 20, 2009 the defendant Alvin Brown did shoot and take the life of Yatasha Johnson acting in his actual and bona fide belief that such was necessary to protect himself from great bodily harm or death at the hands of Albert Coleman but that such belief by the defendant was not a reasonable belief under the circumstances, then you may find the defendant guilty of the lesser included offense of manslaughter**. (Emphasis added to show the instruction at issue.)

¶17. The imperfect self-defense instruction was the only manslaughter instruction given by the trial court. Thus, it is not disputed that Brown was found guilty under the theory of imperfect self-defense manslaughter.

**Whether the trial court erred in giving the imperfect self-defense jury instruction.**

¶18. Brown argues that the trial court erred in giving the imperfect self-defense jury instruction because there was no evidence to support the lesser offense and he never requested a self defense jury instruction. Brown did not argue self defense. Rather, he maintained throughout trial that he did not fire the weapon. The trial court instructed the jury on Brown's defense theory, but the trial court also instructed the jury that it could find Brown guilty of manslaughter under the theory of imperfect self-defense. As more fully set forth below, we agree that the evidence did not support giving the imperfect self-defense

7

instruction because our cases require direct proof of the subjective belief, held by the defendant, that his life was in danger or that he might suffer great bodily harm.

¶19.    The Court reviews the grant or denial of proposed jury instructions for an abuse of discretion, and no one instruction should be singled out. *Quinn v. State*, 191 So. 3d 1227, 1231-32 (¶ 18) (Miss. 2016). "In determining whether error exists in granting or refusing jury instructions, the instructions must be read as a whole; if the instructions fairly announce the law and create no injustice, no reversible error will be found." *Jones v. State*, 962 So. 2d 1263, 1272 (¶ 33) (Miss. 2007).

¶20.    Self defense or justifiable homicide is a *defense* to a criminal act. *Ronk v. State*, 172 So. 3d 1112, 1126 (¶ 22) (Miss. 2015). "Self-defense is codified at Mississippi Code Section 97-3-15(f), which provides that the killing of a human being is justifiable '[w]hen committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished.'" *Byrd v. State*, 158 So. 3d 1146, 1151 (¶ 16) (Miss. 2015) (quoting Miss. Code Ann. § 97-3-15(f)). "The apprehension or fear that will justify killing another in self-defense must appear objectively real to a reasonable person of average prudence." *Batiste v. State*, 121 So. 3d 808, 845 (¶ 74) (Miss. 2013). Stated another way, "[t]he actor's apprehension must be *objectively* reasonable before his homicide is justified." *Cook v. State*, 467 So. 2d 203, 207 (Miss. 1985).

¶21. "Unlike true self-defense, imperfect self-defense is *not* a *defense* to a criminal act."[2] ***Ronk v. State***, 172 So. 3d 1112, 1126 (¶ 22) (Miss. 2015). "Rather, under the theory of imperfect self-defense, an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm." ***Id.*** Contrary to the *objective* reasonableness of an actor engaged in true self-defense constituting a justifiable homicide, "[w]here [an] actor's apprehension is *only subjectively*, in his or her own mind, reasonable, the homicide is Section 97-3-35 [heat of passion] manslaughter." ***Cook***, 467 So. 2d at 207. Thus, "the homicide is manslaughter where the defendant acted under the bona fide belief of necessity, without objectively reasonable cause therefor[.]" ***Id***.

¶22. Brown was indicted for one count of depraved heart murder. Depraved heart murder is defined as "[t]he killing of a human being without the authority of law by any means or in any manner . . . [w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual." ***Hawkins v. State***, 101 So. 3d 638, 642 (¶ 12) (Miss. 2012) (quoting Miss. Code Ann. § 97-3-19(1)(b)). "Malicious intent can be inferred from the circumstances if the actions involved a very high degree of carelessness evincing a reckless indifference to the danger to human life." ***Id.***

---

[2] In ***Byrd***, the Court described imperfect self-defense as a "defense theory." ***Byrd***, 158 So. 3d at 1151 (¶ 16). Although imperfect self-defense often is raised by a defendant as a "defense theory," imperfect self-defense is *not* a *defense* to a criminal act. ***Ronk***, 172 So. 3d at 1126 (¶ 22). Instead, imperfect self-defense constitutes the criminal offense of manslaughter. ***Cook***, 467 So. 2d at 207.

¶23. "An indictment for murder includes the lesser-included charge of manslaughter."[3] *Anderson v. State*, 79 So. 3d 501, 505 (¶ 17) (Miss. 2012); *see also* Miss. Code § 97-3-19(3) (Rev. 2014) ("An indictment for murder or capital murder shall serve as notice to the defendant that the indictment may include any and all lesser included offenses thereof, including, but not limited to, manslaughter."). The Court consistently has held that manslaughter is a lesser included offense of murder. *State v. Shaw*, 880 So. 2d 296, 303 (¶ 25) (Miss. 2004); *see also Batiste*, 121 So. 3d at 844 (¶ 69). Mississippi Code Section 99-19-5(2) provides, in part, that "manslaughter shall be considered a lesser included offense of murder and capital murder, and the jury may be properly instructed thereon, upon request by either party or upon the court's own motion, in any case in which the giving of such instruction would be justified by the proof, consistent with the wording of the applicable manslaughter statute." Miss. Code Ann. § 99-19-5(2) (Rev. 2015).

¶24. "A lesser-included offense instruction should be granted unless the trial judge–and ultimately this Court–can say, taking the evidence in the light most favorable to the accused, and considering all favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of the principal charge)." *Goodnite v. State*, 799 So. 2d 64, 68 (¶ 20) (Miss. 2001).

---

[3] Whether imperfect self-defense manslaughter is a lesser included offense or a lesser nonincluded offense of depraved heart murder is not an issue raised by Brown or the State.

10

¶25.    In *Harveston v. State*, 493 So. 2d 365, 375 (Miss. 1986), the Court explained the

standard in determining whether a lesser included offense instruction should be given:

> We recognize in certain cases, as a matter of trial strategy, defense counsel
> may wish to have the case put to the jury on an all or nothing basis, the jury's
> alternatives being to find the defendant guilty as charged in the indictment or
> acquitted.  Our law, however, allows the prosecution to request and obtain
> lesser-included offense instructions, as it does the defense.  The test for
> whether such an instruction should be granted is the same: is it warranted by
> the evidence?  Where the answer is affirmative, the defendant has no right to
> complain of the circuit court's submission to the jury of a properly phrased
> lesser-included offense instruction, either at the request of the prosecution or
> on its own motion.

*Harveston v. State*, 493 So. 2d 365, 375 (Miss. 1986).  Simply put, "[t]here must be an

evidentiary basis in the record to support a lesser-included-offense instruction." *Batiste*, 121

So. 3d at 844 (¶ 69).

¶26.    The question is whether, pursuant to the *Harveston* standard, the jury could have

found that Brown acted with a subject belief, albeit not reasonable under the circumstances,

that he was in danger of losing his life or sustaining bodily harm.  A review of our earlier

pronouncements on the quantum of proof required for giving an imperfect self-defense

instruction produces a negative answer.

¶27.    In *Morgan v. State*, 117 So. 3d 619 (Miss. 2013), the defendant, Joe Morgan, was

convicted of murder of Damien Talbert and manslaughter of Ricky Thomas.  *Id.* at 620 (¶

1).  The facts were strikingly similar to the present case in that the victims, Talbert and

Thomas, were killed by gunshots fired in the culmination of a large fight at a night club.  *Id*.

at 620 (¶ 2).

¶28.    The Court addressed whether the trial court had abused its discretion by refusing Morgan's requested imperfect self-defense jury instruction. *Id*. at 622-23 (¶ 13). One witness observed Talbert fighting Thomas, with Talbert on top of Thomas. *Id*. at 621 (¶ 7). Another witness testified that Morgan was on friendly terms with Thomas, and the two had known each other for about seven years. *Id***.** at 621 (¶ 8). A police officer testified that Morgan and Talbert were associated with rival gangs. *Id*. at 622 (¶ 10).

¶29.    On appeal, Morgan argued that testimony showed that the club was generally chaotic and dangerous that night; Morgan was on friendly terms with Thomas; Talbert, who was much larger than Thomas, was on top of Thomas when the two shots were fired. *Id.* at 622-23 (¶ 13). Morgan argued that, based on the evidence, the jury could have found that he shot Talbert in defense of Thomas with a real, but unreasonable, belief that it was necessary to save Thomas's life. *Id.* The Court disagreed and held that the trial court did not abuse its discretion by refusing to instruct the jury on imperfect self-defense, because the instruction was without foundation in the evidence. *Id.* at 623 (¶ 14).

¶30.    The Court held that the defendant, Morgan, did not present evidence to support an imperfect self-defense theory through witness testimony, nor did he introduce evidence that a jury could "infer" that Morgan feared for Thomas's life that night. *Id.* at 623 (¶ 15). The Court stated that "[n]ot one witness testified or implied that Morgan killed Talbert to protect Thomas that night." *Id*. at 623 (¶ 16). The Court stated that the "only theory presented through witnesses called by the defense was that Morgan was not the shooter." *Id.* at 623 (¶ 16). And "Morgan presented no evidence that Morgan feared Talbert or believed Talbert

12

to be a threat to Thomas, or, for that matter, that Morgan even was aware that Talbert was prevailing in a fight with Thomas, to provide a foundation for the requested [imperfect self-defense] instruction." *Id.* at 623-24 (¶ 16). In other words, the *Morgan* Court upheld the rejection of a lesser-included offense, imperfect self-defense instruction in a case with similar facts, *e.g.*, that the victim was larger, because the facts were not such that the jury could find the requisite subjective belief. The record of the case *sub judice* likewise lacks evidence that Brown maintained the requisite subjective belief, and the *Morgan* Court rejected the State's position – that such belief could be inferred from the circumstances. The underlying facts and defense theories in today's case and *Morgan* are simply too similar to uphold the State's requested imperfect self-defense instruction.

¶31. Moreover, given the facts of today's case, we cannot agree that, if Brown had maintained the required subjective belief, it would have been an unreasonable one. In *Young v. State*, 99 So. 3d 159, 160 (¶ 1) (Miss. 2012), Lonnie Young shot and killed his wife's ex-lover, Otis Morgan. Young was convicted of murder. *Id*. Young testified that he had confronted Morgan at a family reunion. *Id*. at 161 (¶¶ 3-4). In response, Morgan had pulled a gun, which prompted Young to shoot and kill Morgan. *Id*. The State's theory of the case was that Young had approached Morgan, who was unarmed, and shot and killed him. *Id.* Young requested a self defense instruction and an imperfect self-defense instruction. *Id*. at 162 (¶ 8). The trial court found that, while the facts in the case were sufficient to justify a self defense instruction, the facts did not justify imperfect self-defense. *Id.* The Court held

13

that an imperfect self-defense instruction properly was refused. *Id.* at 165 (¶ 21). The Court reasoned:

> Young's own testimony was that Morgan had pulled a gun on him first; Morgan's pulling a weapon on him was the only reason Young offered for killing Morgan. Taken as true, this showed that Young faced imminent danger and that his apprehension was objectively reasonable. This evidence did justify Young's proffered self-defense jury instruction, which was properly granted. However, this evidence provides no evidentiary basis for the bona fide but unfounded belief required for an imperfect-self-defense instruction.

*Young*, 99 So. 3d at 166 (¶ 22). The Court went on to name all of the "facts that occurred [leading] up to the confrontation" that had to be "totally disregarded" by the trial court in order to approve the imperfect self-defense instruction:

> Specifically, that Mr. Young laid in wait and planned, waiting on Mr. Morgan, for him to arrive at this house for him to be confronted. He armed himself with a weapon. He knew there was going to be trouble. He testified that they had not had any argument, no dispute that day or any day prior to that. It was all based on something that happened three or four years earlier. So for [the trial court] to give, basically, [the imperfect-self-defense jury instruction] would be to totally disregard all of those facts.

*Id.* at 166 (¶ 23). The Court agreed and held that "based on the facts and testimony in the record, there [was] insufficient evidence to warrant an imperfect-self defense instruction." *Id*.

¶32.    While taking Young's testimony as true, it was undisputed that he faced imminent danger and his apprehension was objectively reasonable. *Id.* at 166 (¶ 22). As a result, the Court held that "the evidence provid[ed] no evidentiary basis for the bona fide *but unfounded* belief required for an imperfect-self-defense instruction." *Id*. Because the victim was attacking Brown at the time of the shooting in the case *sub judice*, we cannot follow *Young*

14

and hold that any belief Brown may have held regarding danger to himself would have been unreasonable in the face of the imminent danger confronting him.

¶33. The Court's holdings in *Young* and *Morgan* conflict with the Court of Appeals' opinion in the instant case. As in *Young* and *Morgan*, no evidentiary basis existed showing Brown had a bona fide but unfounded belief that shooting at Coleman was necessary to prevent death or great bodily harm. The trial court should have refused the State's request for an imperfect self-defense instruction, as it did in *Young* and *Morgan*.

¶34. Because the imperfect self-defense instruction was without foundation in the evidence, we hold that the trial court abused its discretion in giving the instruction as a matter of law. No evidence was presented showing that Brown had an *unfounded* belief that he was facing imminent great bodily harm. Had evidence shown that Brown was winning the fight with Coleman or he had an opportunity to escape the fight, then an imperfect self-defense instruction might have been warranted.

## CONCLUSION

¶35. The trial court erred in giving the imperfect self-defense instruction because there was no evidentiary basis in the record to support an imperfect self-defense instruction. Accordingly, the Court reverses the judgments of the Hinds County Circuit Court and the Court of Appeals and remands the case to the trial court for a new trial consistent with this opinion.

¶36. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**