# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00835-COA

**DERRICK NELSON A/K/A DERRICK**      **APPELLANT**
**DEMETRIUS NELSON**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

DATE OF JUDGMENT:     05/19/2016
TRIAL JUDGE:       HON. JAMES T. KITCHENS JR.
COURT FROM WHICH APPEALED: LOWNDES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:  DAVID NEIL MCCARTY
ATTORNEY FOR APPELLEE:   OFFICE OF THE ATTORNEY GENERAL
            BY: ALICIA MARIE AINSWORTH
DISTRICT ATTORNEY:    SCOTT WINSTON COLOM
NATURE OF THE CASE:    CRIMINAL - FELONY
DISPOSITION:       REVERSED AND REMANDED: 10/30/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

   **EN BANC.**

   **FAIR, J., FOR THE COURT:**

¶1. Derrick Nelson was convicted of first-degree murder for the shooting of his mother's boyfriend, Willie Hood. Nelson told police that Hood attacked him and tried to take his gun, which went off accidentally during the struggle and killed Hood. On appeal, Nelson claims the evidence was insufficient to convict him of first-degree murder and that the circuit court erred in refusing to instruct the jury on imperfect self-defense, a legal theory that reduces an intentional killing from murder to manslaughter where the defendant killed the victim out of a sincere but unreasonable belief that it was necessary to protect himself from death or great bodily harm.

¶2.     The jury should have been instructed on imperfect self-defense, and, because it was not, we reverse Nelson's conviction and remand for a new trial.

## DISCUSSION

### 1.     Imperfect Self-Defense

¶3.     Two eyewitnesses testified for the prosecution. Both were Nelson's sisters, and their accounts at trial were mostly consistent with his: Nelson, Hood, Nelson's sisters, his mother, and others were having a graduation party for Nelson's brother. There is no dispute Hood was drunk—a post-mortem examination confirmed that his blood-alcohol content was 0.21, more than two and a half times the legal limit for operating a motor vehicle. Nelson took the keys to Hood's vehicle, and Hood demanded that he return them. Hood became very agitated when Nelson refused. Eventually, Nelson relented and gave up the keys, calling a friend for a ride. But Hood remained agitated and continued arguing with various members of Nelson's family.

¶4.     Hood then began "swinging wildly" and punching his own vehicle repeatedly, breaking a wind guard and one of the vehicle's windows; then he picked up a beer bottle and threw it either at the vehicle or at Nelson; the bottle glanced off Nelson before hitting the vehicle and breaking, with some of the broken glass hitting Nelson. Around this time Nelson's ride arrived. A man from out of state whom Nelson knew only as "Smiley" was driving the vehicle. According to Nelson's statement, he saw a pistol on the passenger's seat of Smiley's vehicle, and he picked it up and fired it into the air several times in what he

2

claimed was an effort to get Hood's attention and put an end to his tantrum. Nelson told Hood to "chill out" and that he would not hurt him, but Hood responded by advancing on Nelson and trying to take the gun. While they were grappling over it, the gun discharged, and Hood was hit in the forehead, killing him.

¶5. The sisters' testimonies mostly tracked Nelson's account, though both frequently claimed a lack of memory at trial, and they were impeached with statements they had given the police on the night of the killing that suggested the shooting was a murder by Nelson. Nelson fled the scene after the shooting, but he turned himself in about ten hours later.

¶6. Nelson did not testify at trial or present any evidence in the defense's case in chief. He instead based his defense on his statement to police, which the State put into evidence, and on the testimonies of his sisters. The trial court instructed the jury on the theories of first-degree murder, second-degree murder, misdemeanor manslaughter, heat-of-passion manslaughter, culpable-negligence manslaughter, accident, and self-defense. Nelson's instruction on imperfect self-defense was initially accepted without objection from the prosecution. But when the State objected to the self-defense instruction, the trial court expressed doubt about whether it was warranted. It ultimately decided to give a self-defense instruction out of an abundance of caution. But, without further prompting from either party, the court changed its mind about the imperfect self-defense instruction and refused it.

¶7. "Unlike true self-defense, imperfect self-defense is not a defense to a criminal act. Rather, under the theory of imperfect self-defense, an intentional killing may be considered

3

manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm." *Brown v. State*, 222 So. 3d 302, 307 (¶21) (Miss. 2017).

¶8. The State offers three reasons why the instruction should not have been given but we find none persuasive. First, it contends that because Nelson used a deadly weapon, he acted with malice and could not claim the shooting was manslaughter by imperfect self-defense. This argument warrants little discussion because malice *may* be inferred from the use of a deadly weapon. *Anderson v. State*, 79 So. 3d 501, 507 (¶22) (Miss. 2012).

¶9. Next, the State contends the instruction should not have been given because there was no evidence Nelson had a bona fide fear of death or serious injury from Hood, as Nelson did not claim to have acted in self-defense. The State acknowledges Hood outweighed Nelson by fifty pounds, was intoxicated, and had acted violently that night and on previous occasions; but it points out that his violence had been mostly directed toward his own property, and his prior scraps with Nelson had never resulted in serious injury. In this argument, the State entirely neglects to mention that Hood was trying to use his superior size to take Nelson's firearm, which is a deadly weapon. We conclude that a bona fide fear could be inferred from the circumstances, notwithstanding Nelson's claim that the shooting was an accident.

¶10. The last theory the State advances is essentially the opposite argument: it contends no reasonable juror who believed Nelson's account could find that self-defense was

unreasonable. If that were the case, the instruction would be properly denied, as it was in *Young v. State*, 99 So. 3d 159, 166 (¶22) (Miss. 2012). The State analogizes this case to *Young*, but Young claimed to have killed his wife's lover after the other man pulled a gun during an argument. *Id*. The circumstances here are much more murky, as Nelson was the one who introduced the deadly weapon. A reasonable juror could conclude that, while Nelson may have sincerely believed Hood would use the weapon against him if he was able to take it, such a fear was not reasonable under the circumstances.

¶11. Nelson claimed in his statement that the shooting was an accident. But although there was no direct evidence he shot on purpose, there is quite a bit of circumstantial evidence. The two had been arguing, and the gun that began the fight was in Nelson's possession and under his control. It was discharged toward Hood's head, killing him and causing Nelson to win the fight, which Hood's superior size suggested that Nelson would otherwise have lost. And instead of sticking around to explain what he later said happened, Nelson fled after the shooting. Nelson also had plenty of reason to lie about whether the shooting was done on purpose—to reduce his culpability both to the authorities and to his family, since Hood was his mother's boyfriend and apparently had been for some time.

¶12. From these facts, a reasonable juror could conclude Nelson shot Hood intentionally and lied when he said it was an accident; this was exactly what the State argued in advancing its theory that the killing was murder. But a reasonable juror could still believe the rest of Nelson's account was true. Our supreme court has "repeatedly held that in a criminal

5

prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the [S]tate or on behalf of the accused." *Mangum v. State*, 762 So. 2d 337, 346 (¶35) (Miss. 2000). The jury can "disregard any portion of the evidence either for the state or for the defendant." *Martin v. State*, 112 Miss. 365, 374-75, 73 So. 64, 66 (1916).

¶13.    In *McTiller v. State*, 113 So. 3d 1284, 1292-93 (¶¶26-28) (Miss. Ct. App. 2013), this Court reversed a conviction when presented with almost the same issue as in today's case. McTiller and another man were fighting over a gun, and the other man ended up shot. *Id.* at 1288 (¶¶5-9). At trial, McTiller contended both that the shooting was accidental and that, in the alternative, it had been done in self-defense. The trial court gave an accident instruction (albeit an insufficient one), but it refused to instruct on self-defense because it contradicted McTiller's claim the shooting was an accident. We found this to be reversible error because, just as in this case, "[a] criminal defendant has a right to assert alternative theories of defense, even inconsistent alternative theories." *Id.* at 1292 (¶26) (quoting *Reddix v. State*, 731 So. 2d 591, 593 (¶9) (Miss. 1999)).

¶14.    It is Nelson's actual intent that matters, and whether to believe him about what he intended to do was a question for the jury, not the court. In *Prine v. State*, the supreme court explained:

> The jury might believe Prine . . . brought on the difficulty, and that he entered it armed with a pistol, yet Prine was not cut off from the right of self-defense, unless the jury should further believe from the evidence that Prine so brought on the difficulty, armed with a deadly weapon, and intending to use it when he

6

provoked or brought on the encounter. He must have been the originator of the difficulty; he must have entered it armed, and he must have so brought it on and entered into it intending to use his pistol and overcome his adversary, if necessary in the course of the encounter.

*Prine v. State*, 73 Miss. 838, 843, 19 So. 711, 712 (Miss. 1896). In his statement to the police, Nelson averred that he never intended to use the weapon on Hood; he said he fired it to get Hood's attention and stop his tantrum (which was at that point directed at Nelson's mother or sisters). After firing the shots, perhaps because he realized the gesture could be misinterpreted, Nelson told Hood he would not hurt him, but Hood advanced on him in an attempt to take the weapon. A reasonable juror could certainly conclude Nelson's story is a lie and that he was just angry with Hood; but she could also conclude he was telling the truth and that his use of the gun was just a bad decision in the heat of the moment, lacking a "murderous purpose" that denies him the right to claim self-defense. *See Prine*, 73 Miss. 842-43, 19 So. at 712. "[E]ven if the great weight of the evidence . . . supports a contrary view, [the defendant] is still entitled to present his defense to the jury." *Johnson v. State*, 908 So. 2d 758, 763 (¶18) (Miss. 2005).

¶15. Even if we were to find that Nelson's firing the gun into the air made him an aggressor, and at that point he lost his right to claim self-defense, Nelson said he immediately told Hood to "chill out" and averred that he did not intend to hurt him. An aggressor can still claim self-defense if he by "unequivocal acts abandons his original position of aggression and discloses that fact to his adversary in some appropriate manner." *Wilkinson v. State*, 143 Miss. 324, 339, 108 So. 711, 714 (1926) (Ethridge, J., dissenting); *see also* 40 C.J.S.

7

*Homicide* § 195 (2018) ("[E]ven if a person is an aggressor, he or she can lose that status by clearly withdrawing from a fight and can evince that desire to withdraw by either word or act so long as the person's intentions are clear."). Whether Nelson's attempt at withdrawal was effective was a question for the jury, not for the court.

¶16. We agree that the evidence was sufficient to convict Nelson of first-degree murder. But if the evidence was sufficient to convict Nelson of murder, which is an intentional killing, then it was sufficient to show the killing was intentional for the purposes of Nelson's proffered imperfect self-defense instruction. Nelson told police the shooting was an accident, but that does not bar him from claiming imperfect self-defense because he had "a right to assert alternative theories of defense, even inconsistent alternative theories." *Brown v. State*, 39 So. 3d 890, 899 (¶34) (Miss. 2010). The instruction should have been given if supported by the evidence, "no matter how meager or unlikely." *Id*.

¶17. We conclude that, since an evidentiary basis existed for the imperfect self-defense instruction, it should have been given. A reasonable juror could find Nelson was in control of the weapon and fired it intentionally when he killed Hood. Thus, there was sufficient evidence for a jury to convict Nelson of first-degree murder. But, likewise, there was sufficient evidence for a jury to find Nelson acted intentionally for the purposes of imperfect self-defense.

¶18. The Mississippi Supreme Court has held that "every accused has a fundamental right to have her theory of the case presented to a jury, even if the evidence is minimal." *Chinn*

*v. State*, 958 So. 2d 1223, 1225 (¶13) (Miss. 2007). "In homicide cases, the trial court should instruct the jury about a defendant's theories of defense, justification, or excuse that are supported by the evidence, no matter how meager or unlikely." *Brown*, 39 So. 3d at 899 (¶34). Our courts "greatly value the right of a defendant to present his theory of the case and where the defendant's proffered instruction has an evidentiary basis, properly states the law, and is the only instruction presenting his theory of the case, refusal to grant it constitutes reversible error." *Chinn*, 958 So. 2d at 1225 (¶13).

¶19.    Since the jury was not instructed on imperfect self-defense, we reverse Nelson's conviction and remand for a new trial.

### 2.    Sufficiency of the Evidence

¶20.    Even though we are reversing on the jury-instruction issue, Nelson also challenges the sufficiency of the evidence to support his conviction for first-degree murder. If we were to find the evidence insufficient, this Court would be required to reverse and *render* the conviction, at least as to first-degree murder. *See Hawthorne v. State*, 883 So. 2d 86, 89 (¶8) (Miss. 2004). This would preclude retrial on that charge; so we address this issue as well.

¶21.    First-degree murder is defined as a killing, without authority of law, "done with deliberate design to effect the death of the person killed." *See* Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2014). "Deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent." *Brown v. State*, 965 So. 2d 1023, 1030 (¶28) (Miss. 2007).

9

¶22. On appeal, Nelson contends that the prosecution lacked evidence to support a finding of deliberate design. We disagree. It was undisputed that Nelson introduced the gun into the fight, that he was in control of it when it began, and that it was discharged and killed Hood. A reasonable juror could conclude that Nelson was still in control of the weapon when it fired, and "deliberate design[] may be inferred from the use of a deadly weapon." *Anderson v. State*, 79 So. 3d 501, 507 (¶22) (Miss. 2012). Moreover, there was evidence suggesting a motive—prior conflicts between the two, and of an immediate provocation (if not a legally adequate one) by Hood through his actions on the night of the killing. There was also the testimony of one of Nelson's sisters describing him as meeting Hood in combat rather than merely resisting his advance, and Nelson's flight after the shooting. From these facts, a reasonable juror could conclude that Nelson committed first-degree murder. This issue is without merit.

¶23. **REVERSED AND REMANDED.**

**LEE, C.J., BARNES, CARLTON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. WILSON, J., DISSENTS WITH SEPARATE OPINION, JOINED BY IRVING AND GRIFFIS, P.JJ.**

**WILSON, J., DISSENTING:**

¶24. There was no evidence from which a reasonable juror could have found that Nelson killed Hood intentionally "but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm." *Brown v. State*, 222 So. 3d 302, 307 (¶21) (Miss. 2017). Therefore, the trial judge did not err by denying Nelson's request for a jury

instruction on imperfect self-defense. I would affirm Nelson's conviction. Accordingly, I respectfully dissent.

¶25. As the majority acknowledges, Nelson claimed in a videotaped interview and signed statement that he killed Hood by accident—that the gun just "went off" during a struggle. Nelson did *not* tell police that he shot Hood intentionally in self-defense. And Nelson did not testify at trial.

¶26. Nelson's sister Kinuna Davis testified that she recalled some sort of "verbal[] . . . altercation that led to a physical altercation," and Hood broke a beer bottle on his own car at some point. But she claimed to remember little else about the night of the murder. At trial, Davis testified as follows:

> Q. Okay. But today as you sit in the stand, do you know how the actual altercation that ended up with Willie Hood being shot?
>
> A. No.
>
> Q. Do you recall seeing exactly what happened?
>
> A. No.

Davis's testimony directly contradicted her signed statement from the night of the murder, which was used to impeach her. In her statement, Davis stated: "Nelson grabbed [Hood] from behind and put his hands around his neck. [Nelson] place[d] [Hood] on the car and shot [Hood] in the head. [Hood] fell to the ground." At trial, Davis claimed that although she remembered telling the police that, she did not "recall actually seeing that happen."

¶27. Nelson's other sister Asia Nelson (Asia) similarly incriminated Nelson on the night

11

of the murder but then claimed to remember little at trial.  In her testimony at trial, Asia said she recalled "arguing," "pushing," and an "altercation" of some sort.  She said Hood broke a beer bottle and was "wild swinging."  But she claimed that she did not see what Nelson and Hood were doing when Nelson shot Hood.  Indeed, she claimed she did not even see who fired the shot that killed Hood.  Her testimony contradicted her signed statement from the night of the murder, which was used to impeach her.  In her statement to police, she stated that Nelson fired his gun into the air and "I then seen [Nelson] walk up [and] shoot [Hood] in the head."  When questioned about her statement at trial, Nelson claimed, "I recall saying it.  I don't recall it happening."  She said the statement was not true.

¶28.    Nelson's own version of events, based on his statements to police, did not warrant an instruction on imperfect self-defense.  "[U]nder the theory of imperfect self-defense, an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm." *Brown*, 222 So. 3d at 307 (¶21).  Because self-defense, imperfect or otherwise, requires an intentional act, there is no such thing as "accidental self-defense."  *See, e.g.*, *State v. Whitchurch*, 96 S.W.2d 30, 35 (Mo. 1936) ("Taking human life in self-defense is an affirmative, positive, intentional act, and the law does not recognize the anomalous doctrine of accidental self-defense.") (citations omitted); *Wakefield v. State*, 447 So. 2d 1325, 1327 (Ala. Crim. App. 1983) (same); *Grimes v. McAnulty*, 957 S.W.2d 223, 227 (Ky. 1997) ("By its very nature, self-defense relates to an intentional or knowing use of force and not an

12

accidental shooting."). Rather, to warrant an imperfect self-defense instruction, there must be proof that the killing was intentional and the product of a "subjective belief, held by the defendant, that his life was in danger or that he might suffer great bodily harm." *Brown*, 222 So. 3d at 306 (¶18). Therefore, Nelson's claim that the shooting was an accident did not support an imperfect self-defense instruction. Nelson *was* entitled to an instruction on the excuse of accident. Such an instruction was given, but the jury rejected the excuse.

¶29. I grant that in some cases a defendant may be entitled to both an accident instruction and a self-defense and/or imperfect self-defense instruction. For example, instructions on inconsistent theories might be warranted the defendant's own testimony (or statement) supported one theory while other evidence supported another theory. However, Nelson's sisters' testimony did not justify an imperfect self-defense instruction in this case. The sisters testified that they did not see the shooting and remembered little else. Even setting aside the fact that their testimonies were thoroughly impeached by their prior inconsistent statements, the sisters' hazy recollections of some sort of "altercation" or "wild swinging" did not entitle Nelson to an imperfect self-defense instruction.

¶30. In summary, no evidence was presented from which a reasonable juror could have found that Nelson killed Hood intentionally "but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm." *Brown*, 222 So. 3d at 307 (¶21). Based on Nelson's statements to police, the jury could have found that the shooting was an accident, and the trial judge granted Nelson an instruction on that theory. However, a jury

13

would have to engage in pure speculation to find that Nelson shot Hood intentionally but in "imperfect self-defense." To warrant an instruction on imperfect self-defense, there must be evidence that the killing was intentional and the product of a "subjective belief, held by the defendant, that his life was in danger or that he might suffer great bodily harm." *Id.* at 306 (¶18). There is no such evidence in this case. Accordingly, the trial judge did not err by refusing the proffered instruction, and Nelson's conviction should be affirmed.

**IRVING AND GRIFFIS, P.JJ., JOIN THIS OPINION.**