# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00821-COA

**CHRISTOPHER PAYTON BUTLER A/K/A**            **APPELLANT**
**CHRISTOPHER BUTLER**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/06/2024 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JODY E. OWENS II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/02/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McCARTY, JJ.**

**WESTBROOKS, J., FOR THE COURT**:

¶1. A jury convicted Christopher Butler of first-degree murder. The trial court granted Butler's request for a self-defense jury instruction, but the court denied his request for an imperfect self-defense instruction. On direct appeal, Butler argues that the trial court erred in denying his request for an imperfect self-defense instruction. Finding no error, we affirm.

## FACTS AND PROCEEDINGS BELOW

¶2. On April 27, 2018, near Terry Road and Colonial Drive, officers were dispatched to investigate an alleged shooting. A surveillance video taken from a business across the street

from the scene showed a man in an orange shirt, later identified as Christopher Butler, following a man with a black backpack, later identified as Damien Harris, along the sidewalk. Butler was walking quickly behind Harris, who appeared to be unaware that he was being followed. Although the street was busy with traffic, the video clearly showed Butler in an orange shirt following Harris for about thirty yards before Butler suddenly ran in the opposite direction up the street and across a parking lot.

¶3.     At trial, the State introduced the testimonies of Lateisha Bailey, Officer Gloria Blue, Capitol Police Master Sergeant Jasmine Hayes, Officer Anthony Fox, Dr. Mark LeVaughn, and Felicia McIntire. First, Lateisha Bailey testified that she and her ex-husband were driving down Terry Road and saw two Black men walking down the street, when suddenly one of the men shot the other and ran off. Upon hearing the gunshot, they pulled over and asked the victim—later identified as Harris—if he was okay, to which he replied that he had been shot. Next, Jackson Police Department Officer Gloria Blue testified that she was dispatched to the scene at 8:03 a.m. to respond to reports of a shooting. Upon arrival, she secured the immediate area and began interviewing witnesses.

¶4.     The State then called Capitol Police Master Sergeant Jasmine Hayes, the lead investigator who arrived at the scene around 9:00 a.m., to testify. When Hayes arrived, Harris had already been transported to the hospital to receive treatment for multiple gunshot wounds. At the scene, Hayes saw three shell casings from a .40-caliber Hi-Point firearm and blood on the ground. Hayes testified that in the video she obtained from a business across the

street, she observed a Black male, later identified as Damian Harris, walking southbound on Terry Road with a backpack, and another Black male approach Harris from behind at the intersection of Terry Road and Colonial Drive, who then fled in the opposite direction. At no point were the men walking together. Hayes explained that shell casings found at the scene matched a gun that was confiscated by police following the traffic stop and arrest of Christopher Bradfield on June 15, 2018. Hayes testified that in an interview she had with Bradfield, he explained that Butler had put the gun in his car. Bradfield further explained that one day Butler came to his house upset and told him that he had gotten into a fight with a guy who lived close by and asked Bradfield to hold the gun for him because it had "a body on it." Bradfield kept the gun for two months until his traffic stop arrest.

¶5.     Hayes testified that she interrogated Butler on August 7, 2019, a year after the shooting. During the interrogation Butler told Hayes that he did not know Harris and did not have a gun. However, as the interrogation continued, Butler disclosed that he had gotten into a fight with Harris and that the same gun recovered from Bradfield originally belonged to him before he sold it. Hayes told the court that Butler explained to her that Harris harassed him whenever they saw each other and that Harris had even choked him on one occasion. Butler explained that Harris was a lot bigger than him and that on the day of the choking incident, Harris had come up to him and insulted and hit him. Butler went across the street to get a two-by-four wooden board to beat Harris. After Butler hit him, Harris choked him. On April 27, 2018, the day of the shooting, Butler told Hayes that he and Harris had gotten

3

into a heated argument that resulted in him shooting Harris in self-defense.

¶6.     Hayes testified that she did not believe Butler shot Harris in self-defense because Butler's story contradicted the video evidence, which clearly showed Butler approach Harris from behind. She stated that it was clear from the video that Harris did not know Butler was behind him.

¶7.     Following Hayes testimony, Clinton Police Department Officer Anthony Fox testified that on June 15, 2018, he confiscated a .40-caliber High Point firearm that matched the shell casings from Christopher Bradfield during a traffic stop and arrest. Bradfield explained to Fox that he received the .40-caliber Hi Point firearm from a friend. Hayes also testified that Bradfield gave a statement that Butler put the gun in his car and told Bradfield that "he had gotten into a fight with a guy that stayed by him . . . and he pulled out the gun. He told me to hold it for him and said he shot him. [Bradfield] asked him did he kill him and [h]e said he don't know."

¶8.     Dr. Mark LeVaughn, a medical doctor specializing in anatomic and forensic pathology, testified that the manner of death was a homicide caused by multiple gunshot wounds. Harris was shot twice: one in the lower left abdomen and once in the left thigh. Both bullets entered from the back. Harris had no weapons on him at the time of his death. Finally, Forensics Firearm Specialist Felicia McIntire testified that the shell casings from the scene matched the firearm that was confiscated from Bradfield.

¶9.     During the jury instruction conference, Butler's attorney proposed jury instruction

D-20, which covered the defense's theories of imperfect self-defense and heat of passion.[1]

The State objected, stating the defense had no factual basis or evidence to support it. The

proposed jury instruction D-20 stated:

> The Court instructs the jury that if you found Christopher Butler not guilty of
> 2nd Degree murder, you were to consider the charge of manslaughter. The
> Court instructs the jury that if you find from the evidence in this case, beyond
> a reasonable doubt, that Christopher Butler
>
> 1. On or about April 27, 2018 in the First Judicial District of Hinds
>    County, Mississippi;
> 2. That Christopher Butler did shoot and take the life of Damian
>    Harris
> 3. By shooting him multiple times with an unknown caliber firearm
> 4. acting in his actual and bona fide belief that such was necessary
>    to protect himself from great bodily harm or death at the hands
>    of Damian Harris
> 5. but that such belief by the Christopher Butler was not a
>    reasonable belief under the circumstances
> 6. or Christopher Butler did shoot and take the life of Damian
>    Harris
> 7. by shooting him multiple times with an unknown caliber firearm
> 8. while in the heat of passion
>    then you shall find Christopher Butler guilty of offense of
>    manslaughter.
>
> If you find that the State did not prove any one of the above elements, then you
> must find Christopher Butler not guilty of manslaughter.

¶10. The court refused to give the instruction, determining that the imperfect self-defense

---

[1] "Heat-of-passion manslaughter and what is known as 'imperfect self-defense' both derive from Mississippi Code Annotated section 97-3-35 (Rev. 2014)." *Crump v. State*, 237 So. 3d 808, 819 (¶36) (Miss. Ct. App. 2017) (quoting *Cook v. State*, 467 So. 2d 203, 207 (Miss. 1985)). As such, manslaughter can be proved by heat of passion without malice or imperfect self-defense. *Johnson v. State*, 391 So. 3d 217, 233 n.2 (Miss. Ct. App. 2024).

and heat-of-passion jury instruction had no factual basis.[2] On June 5, 2024, Butler was convicted and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. On June 11, 2024, Butler moved for judgment notwithstanding the verdict or a new trial, which was later denied.[3] He now appeals.

## STANDARD OF REVIEW

¶11.    "Jury instructions are generally within the discretion of the trial court, and the settled standard of review is abuse of discretion." *Johnson v. State*, 252 So. 3d 597, 599 (¶8) (Miss. Ct. App. 2017) (quoting *Moody v. State*, 202 So. 3d 1235, 1236-37 (¶7) (Miss. 2016)). This Court reviews jury instructions as a whole and will not reverse the trial court when the jury instructions, "taken as a whole, fairly—although not perfectly—announce the applicable primary rules of law." *Id.* (quoting *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012)).

## DISCUSSION

¶12.    The sole issue Butler raises on appeal challenges the trial court's denial of his request for an imperfect self-defense jury instruction. Again, jury instructions are generally within the discretion of the trial court, and we review the decision to give or refuse them for an abuse of discretion. *Robinson v. State*, 324 So. 3d 1137, 1143 (¶19) (Miss. Ct. App. 2021). A defendant may propose jury instructions on his behalf even if the evidence that supports

---

[2] Butler did not appeal the denial of the heat-of-passion portion of the jury instruction, and it is not an issue before us.

[3] Butler does not raise the denial of his motion for judgment notwithstanding the verdict on appeal.

them is "weak, inconsistent, or of doubtful credibility." *Ellis v. State*, 778 So. 2d 114, 118 (¶15) (Miss. 2000); *see Banyard v. State*, 47 So. 3d 676, 683 (¶18) (Miss. 2010) (holding although the evidence was inconsistent, "the merits of Banyard's duress claim are for a properly instructed jury to weigh"). However, "the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions or is without foundation in the evidence." *Cruz v. State*, 305 So. 3d 149, 156 (¶15) (Miss. Ct. App. 2020) (quoting *Davis v. State*, 18 So. 3d 842, 847 (¶15) (Miss. 2009)), *cert. denied*, 304 So. 3d 1121 (Miss. 2020). Thus, "[i]n reviewing a trial court's grant or denial of jury instructions, our standard of review is that we do not read the jury instructions in isolation, but instead we read them as a whole." *Rushing v. State*, 911 So. 2d 526, 537 (¶24) (Miss. 2005).

¶13. "Self defense or justifiable homicide is a defense to a criminal act." *Brown v. State*, 222 So. 3d 302, 307 (¶20) (Miss. 2017) (quoting *Ronk v. State*, 172 So. 3d 1112, 1126 (¶22) (Miss. 2015)). "The apprehension or fear that will justify killing another in self-defense must appear objectively real to a reasonable person of average prudence." *Nelson v. State*, 284 So. 3d 711, 716 (¶19) (Miss. 2019) (quoting *Batiste v. State*, 121 So. 3d 808, 845 (¶74) (Miss. 2013)); *see Gunn v. State*, 374 So. 3d 1206, 1213 (¶25) (Miss. 2023) ("An aggressor is precluded from pleading self-defense.").

¶14. "Unlike true self-defense, imperfect self-defense is not a defense to a criminal act." *Ronk*, 172 So. 3d at 1126 (¶22)). "[U]nder the theory of imperfect self-defense, an intentional killing may be considered manslaughter if done without malice but under a bona fide (but

unfounded) belief that it was necessary to prevent death or great bodily harm." *Brown*, 222 So. 3d at 307 (¶21) (quoting *Ronk*, 172 So. 3d at 1126 (¶22)). Accordingly, there must be evidence that the defendant "subjectively" believed there existed an imminent danger of death or great bodily harm. *Cruz*, 305 So. 3d at 156 (¶18); *see Nelson*, 284 So. 3d at 718 (¶26) (citing *Drake v. State*, 800 So. 2d 508, 518 (¶41) (Miss. 2001) ("A lesser-included offense instruction should never be granted on the basis of pure speculation.")).

¶15.    In *Cruz*, a woman was arrested for running over her boyfriend and killing him following an argument the couple had prior that evening. *Cruz*, 305 So. 3d at 153 (¶1). She proposed a jury instruction on imperfect self-defense, and the court found that there was no evidence from which a reasonable jury could find that the woman was in any danger when she ran over her boyfriend, who at the time was walking down the street by himself. *Id.* at 157 (¶19). This Court held that the trial judge properly refused an imperfect self-defense instruction because there was no evidence that the defendant subjectively believed that it was necessary to kill the victim after running over the victim. *Id.* at 156-57 (¶19).

¶16.    Here, the trial court did not abuse its discretion in refusing defense instruction D-20. The court correctly determined that there was no foundation for an imperfect self-defense-manslaughter jury instruction. The record shows that Butler proposed and received a self-defense instruction, without objection from the State. Like *Cruz*, the trial judge correctly found that there was no evidence from which a reasonable jury could find that Butler had any belief that he was in danger when he followed Harris down the street. The surveillance video

taken across the street clearly showed Butler walking behind Harris and increasingly getting closer and closer to him, unbeknownst to Harris. Butler shot Harris from behind and then fled in the opposite direction.

¶17.    Although both men, according to Butler, had a volatile relationship, and Harris had threatened and choked Butler before, nothing suggests that Butler—who was walking, following behind Harris—believed he was in danger of Harris at the time of the shooting. Harris was walking down the street, ahead of him, not appearing to realize he was being followed. Butler stated that he was afraid of Harris due to statements and actions that previously took place; however, he never claimed that he feared for his life when he was following Harris down the street. As a result, we find the trial judge properly refused Butler's proposed imperfect self-defense instruction. *See Nelson*, 284 So. 3d at 717-18 (¶¶20-21) (finding the defendant presented no foundation in the evidence for an imperfect self-defense instruction after a homicide).

## CONCLUSION

¶18.    The trial court did not err in denying Butler's request for an imperfect self-defense jury instruction because there was no evidence that Butler had a bona fide belief that his actions were necessary to prevent death or serious bodily harm. We therefore affirm the conviction and sentence.

¶19.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**

9